M. S. MUNSON V. R. O. HALLOWELL AND OTHERS.
CHARLES C. FRANKLAND AND CLINTON TERRY V. R. O. HAL-
LOWELL AND OTHERS.

When a statute, adopted by this State from England or one of the older
American States, has, previous to our enactment of it, received a settled
and uniform construction in the courts of the country from which we have
taken it, our courts will give to it a similar construction ; and such inter-
pretation is to be as much regarded in determining its import and meaning
as if it were expressly so declared in the statute itself.

Courts of equity in England and America have universally and uniformly held
that the statute of limitations does not protect a defendant who had
fraudulently concealed the plaintiff's cause of action.

A plaintiff cannot excuse his delay in instituting his suit on the ground of
fraudulent concealment, if his failure to discover his cause of action is
attributable to his own neglect or default.

The leading authorities in courts of law in England and America reviewed,
and the conclusion deduced that, by the weight of authority, the fraudu-
lent concealment of the plaintiff's cause of action by the defendant, is
held to take the case out of of the bar of the statute of limitations, as well
at law as in equity.

In cases involving legal titles or demands, courts of equity are as much
bound by the statutes of limitations as courts of law are.

There being in this State no distinction between legal and equitable remedies,
it follows, as a question of legislative intention in the adoption of our
statutes of limitation, that the fraudulent concealment by a defendant
of the plaintiff's cause of action, or of the subject matter of the litiga-
tion will prevent the statute from running against the plaintiff.

A different construction would tend to contravene the leading object of the
statute, which, while designed to defeat fraudulent demands asserted after
the lapse of such a time as might disable the other party from repelling
them by evidence, was not intended to deprive of redress a plaintiff who
has been prevented by the acts of the defendant from availing himself of
his remedies.

It is a general rule that no one will be permitted in a court of justice to
claim protection by means alone of his own fraud.

But if a defendant has had open, visible, bona fide possession of property
for a sufficient length of time to complete the bar of the statute in his
favor, he will not be deprived of its protection on account of the fraudu-
lent conduct of his vendors, in which he is not chargeable with privity or
participation, and upon whose fraudulent possession he does not rely in
computing the period of his prescription.

APPEALS from Galveston.  Tried below before the Hon. P. W. Gray.

These suits were brought to the Spring Term, 1854, of the District Court of Brazoria county, by appellee against the appellants, for the recovery of certain slaves.  The venue was changed to Galveston.

The plaintiffs claimed the slaves in controversy as the heirs of Charlotte McCoy, deceased.  The defendants pleaded the statute of limitations, to which the plaintiffs replied coverture and infancy, and further relied upon the allegations that the slaves had been fraudulently removed from the State of Arkansas, in 1845, by one Stevenson, and sold in New Orleans, and that the plaintiff had been unable to discover where they were until within two years before the institution of these suits.

The slaves in controversy were a negro woman named Ann and her five children.  It appeared by the evidence that Ann and the two elder children were purchased in New Orleans by R. P. Jones, in the year 1844 or 1845, and were brought to Texas by him at that time.  The defendant, Munson, came in possession of Ann and three of the children by purchase from persons to whom Jones had sold them.  The defendants, Frankland and Terry, held the two other children under similar title.

In view of the opinion of the court, a detailed statement of the facts is not necessary.

There were verdicts for the plaintiffs in both cases, and new trials refused to the defendants, who thereupon appealed.

*P. McGreal* and *J. B. Jones*, for the appellants.  That portion of the charge given by the court, appearing on the latter part of page 24, is evidently erroneous.  1st. In that it assumes that there is proof before the jury showing the slaves were fraudulently run off, to defraud the rights of the plaintiffs, when, in truth, there is no such proof in the record — either that they were run off at all, or that they were sent to New Orleans, to defraud the plaintiffs.

But, on the contrary, it does appear that they were sent away and sold by the best and only friends of the plaintiffs, their grandmother, Mrs. Carter, and the friend and medical attendant of their

mother in her last illness, and not for the purpose of defrauding plaintiffs, but to protect their rights. Again, the charge assumes that there is proof showing that the slaves were fraudulently concealed, when nothing could be further from the truth; on the contrary, the evidence shows, that the slaves were held, owned and claimed openly, and passed through various hands in the same vicinity.

Again, the charge assumes, that diligent search and inquiry were made; when it does not appear that any search or inquiry was made. And from the circumstances, there were abundant sources of information to which they might have resorted, but not a single scintilla of evidence to show that they did so. But that portion of the charge is incorrect, as a legal proposition.

It is the fraudulent concealment of the plaintiff's right that prevents the statute of limitations from running, even according to the authorities cited by appellees. Here there is no pretence, even that the rights of plaintiffs were concealed from them by any body. Nor is there concealment of any character, and though the grandmother of the plaintiffs, and their friend, Dr. Stevenson, may have been mistaken as to the policy of sending off and selling the slaves, to protect them from the claim of McCoy; yet, there can be no pretence that there was any concealment or fraud in the transaction.

*Merriman* and *Potter*, for the appellees. The statute of limitation commences to run only from the time the fraud is discovered. (Sherwood v. Sutton, 5 Mason, 143; Frankfort v. Markley, 1 Dana, 373; Pugh v. Bell, 1 J. J. Marsh., 401; Crane v. Panther, 4 J. J. Marsh., 77; Croft v. Arthur, 3 Dessa., 223; Wumburzie v. Kennedy, 4 Dessa., 474; Van Rhyn v. Vincent, 1 McCord, 314; Rodix v. Davison, 3 Monroe, 40; Shields v. Anderson, 3 Leigh., 729; Egleberger v. Kibler, 1 Hill Ch. 120; Haywood v. Marsh, 6 Yerg., 69; 2 Story Equity Jurisprudence, § 1521; Whalley v. Whalley, 3 Bligh R., 1; Mason v. McLaughlin, 16 T. R., 24; Moore v. Green, *et al.*, 19 How., 69.)

The taking of the property was a larceny. Where a thing is stolen, a distinction as to the time of the discovery where the

stolen property is, should have weight in deciding when limitation began to run.

MOORE, J. The only material question in these cases for our consideration, grows out of the qualification given by the court to the charge upon the statute of limitation, which is as follows: "But if any of them had been of age, or married more than two years, then such of them would be barred, and you will find for the defendants as to them, unless from the evidence you believe that, while the plaintiffs were minors, the slaves were fraudulently run off and concealed, or so disposed of that they could not be found with diligent inquiry or search within two years before suit, in which event you will find for the plaintiffs, but otherwise for the defendants, as to those who had come of age, or married, two years before suit." The charge, as given, seems to embody two distinct propositions, which the jury are instructed to regard as exceptions to the statute of limitations. The first could be established by proof that the slaves had been "fraudulently run off and concealed," so that the plaintiffs were prevented from bringing suit until within two years next before it was commenced. The second would be maintained by showing that the slaves had been "so disposed of that they could not be found with diligent inquiry or search," within two years before the institution of the suit. Neither of these propositions can be maintained, as exceptions to the running of the statute, in the form they are here presented, and were probably not intended by the learned judge who presided on the trial of the cases in the court below, as distinct grounds of exceptions to the statute, but as separate elements of an exception to it, where it is insisted in response to the plea of the statute, that the plaintiff has been prevented from prosecuting his suit within the time prescribed by law, by the fraudulent concealment from him of his cause of action by the defendants, or the like fraudulent concealment of the subject matter of the suit, so that it could not have been brought within the time provided by law. As this question must enter into the consideration of the case on another trial, without further comment at present, upon

the charge as given, we will endeavor to lay down the correct rule upon the subject.

This question has been several times referred to, and discussed at some length with great ability by the former Chief Justice of this court; and although on two occasions he intimated the opinion that fraudulent concealment of the cause of action, will not prevent the running of the statute, he expressly declined giving an authoritative opinion. (Hall v. McCormick, 7 Tex. R., 269; McDonald v. McGuire, 8 Tex. R., 361.) In the first of these cases, it is said: "Several courts of the highest authority have held, that fraud does not prevent the running of the statute at law. The reason is, that in statutes of limitation, the times at which the actions shall be brought at law are specified. It is declared that they shall be brought within those periods and not after; and certain exceptions, as in cases of disability from infancy, coverture, and the like, are provided for; that courts of law to whom such statutes are addressed, possess no dispensing power; they can neither add to nor impair their provisions, and that it would be an assumption of power to allow of any proviso in addition to the exceptions created by the statute." "But inasmuch as statutes of limitations are generally not addressed to courts of equity, and do not, in express terms, embrace suits in that jurisdiction, these courts, while admitting the authority of such statutes, and adopting them in their procedure, by analogy to the rules of law, have, in their construction of the statutes, introduced exceptions to their operation." And again: "But if the rule of interpretation, first referred to, is sound, and if a court of law cannot permit fraud undiscovered to suspend the operation of the statute without an assumption of legislative power, then fraud, under our statute, cannot defeat the bar in any case whatever. The distinction between law and equity, as separate jurisdictions, is, with us, not recognized. The statute is addressed to a court of blended chancery and common law jurisdiction. It is of like imperative force in all cases to which it extends, whether they involve legal or equitable rights, or depend for their decision on the principles of law or equity." And in the latter case, after having at considerable length, discussed the question, he says,

"we are not to be understood as intimating that, under no circumstances, could fraud or fraudulent concealment be set up to prevent the running of the statute, until discovery be made." (See also Mason v. McLaughlin, 16 Tex. R., 24; Smith v. Talbot, 18 Tex. R., 774; Smith v. Fly, 24 Tex. R., 345.)

It will be perceived, from the above extracts, that the basis upon which the denial of the right to avoid the running of the statute, by proof of the fraudulent concealment of the cause of action by the defendant, is rested, is, that such has not been the construction of the statute in courts of law; and if courts of equity have allowed bills to be prosecuted on this ground, they have done so because they were not bound by the statute, but merely followed and applied it, when they did so, according to their own views of equity and good conscience. And our courts, not being independent of it, are bound to follow the constructions that courts of law have placed upon it. It cannot be doubted, that when a statute, which has been borrowed by us from England, or some of the older American States, has, previous to our enactment of it, received a settled and uniform construction by the courts of the country from which we have taken it, our courts will give to it a similar construction. Such interpretation is to be as much regarded in determining its import and meaning, as if it were expressly so declared in the statute itself. That courts of equity in England and America have universally and uniformly held, that the statute did not protect a defendant who had fraudulently concealed the plaintiff's cause of action, has never been questioned. Before considering, however, whether our courts can look to these decisions as guides for our interpretation of the statute, we will briefly consider what has been the course of decisions upon the question by courts of law.

The leading and best considered case denying the plaintiff's right to maintain the action, is that of Troup v. Smith, 20 Johns., 32, where the question is fully and ably argued by Chief Justice Spencer, on the same grounds presented in the case of Hall v. McCormick, and McDonald v. McGuire, (supra.) The learned judge concludes by saying: "Courts of Equity, not being bound by the statute any further than they have seen fit to adopt its pro-

visions as a reasonable rule, and then only in analogy to the general doctrine of that court, are perfectly right in saying that a party cannot in good conscience avail himself of the statute, when, by his own fraud, he has prevented the other party from coming to a knowledge of his rights, until within six years prior to the commencement of the suit. But courts of law are expressly bound by the statute; it relates to specific actions; and it declares that such actions shall be commenced and sued within six years next after the cause of such actions accrued, and not after—thus not only affirmatively declaring within what time these actions are to be brought, but inhibiting their being brought after that period. And this case has been subsequently followed in the same State, in Leonard v. Pitney, 5 Wend., 29; and Allen v. Miller, 18 Id., 202. The same rule is laid down in South Carolina, in the case of Miles v. Berry, 1 Hill, 296. In North Carolina, in the case of Hamilton v. Smith, 3 Murph., 115, it is held, that *fraud not discovered* until within three years next before the bringing of the suit, does not prevent the running of the statute. But it will be observed, in that case, the element of concealment seems to be wanting. It cannot be questioned, that the plaintiff cannot avail himself of fraud as an excuse for his delay, if it is through his own neglect or default that he fails to discover it. And in Virginia, in Callis v. Waddy, 2 Mumf., 511, it was held in an action for deceit, that a replication that the fraud came to the plaintiff's knowledge, &c., is not good. But subsequently, in Rice v. White, 4 Leigh, 474, it is said: "It seems that, if the fraud was not discovered till some time after it was practiced, and within the time of limitation, this would suffice to take the case out of the statute."

The contrary position has been held by the English courts. It was said by Lord Mansfield, in the case of Bice v. Holbech, 2 Doug., 654a.: "There may be cases, too, which fraud will take out of limitations." And this case has been often cited, both at law and in equity, since its decision, and has never been denied in England, but has uniformly been quoted and recognized by standard elementary writers. (Esp. Dig. N. P., 151; 3 Com. on Cont., 499; 2 Stark. Ev., 890; 6 Bac. Abridg. Limitations, D., 476; Com. Dig. Action upon the case upon assumpsit, H., 5.) It was

cited by the attorneys on both sides in the case of Short v. McCarthy, 5 Eng. Com. L. R., 403; and although the case went off on another point, its authority seems not to have been questioned. In Clarke v. Hougham, 2 Barn. & Cress., 149, Mr. Justice Best said: "It has been answered, that fraud prevents the operation of the statute of limitations. It is not necessary to decide that now; but I think it would have done so had the replication raised the point." Again in the case of Granger v. George, 2 Barn. & Cress., 149, the court held, that the case was not taken out of the statute, because, as was said, "there not being evidence of any fraud practiced by the defendant to prevent the plaintiff from obtaining a knowledge of what had been done." And in the American courts the same view of the statute is supported by a still greater weight of authority. In Massachusetts, in First Mass. Turnpike Co. v. Field, Chief Justice Parsons says: "Neither can the statute be considered as intending to protect any man in the quiet enjoyment of the fruits of a fraudulent execution of a contract, if the action be commenced within six years after the discovery of the fraud. The delay of bringing the suit is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued, until the plaintiff could obtain a knowledge that he had a cause of action. If this knowledge is fraudulently concealed from him by the defendant, we should violate a sound rule of law, if we permitted the defendant to avail himself of his own fraud." (See also Homer v. Fish, 1 Pick., 434; Welles v. Fish, 3 Id., 74.) In Pennsylvania, it is said, in Jones v. Conway, 4 Yates, 109, that "statutes of limitations only take place from the time when the right of action accrues; and if there be fraud, from the time of its discovery." It is, also, so held in McDowell v. Young, 12 Serg. & Raw., 115; Rush v. Barr, 1 Watts, 110; Pennock v. Freeman, Id., 401. These cases, as well as the first and leading one from Massachusetts, should be regarded with us with peculiar significance; because, in Pennsylvania, as with us, they have no separate chancery courts; and the case from 3 Mass., was decided before they had established their courts of equity. It has also been decided in Maine, that the plaintiff may be relieved from the statute of limitations, by plea and proof that the defend-

ant fraudulently concealed from him the knowledge of the cause of action. (McKown v. Whitmore, 31 Maine, 448; Bishop v. Little, 3 Greenl., 405.) And in the case of Sherwood v. Sutton, in the Circuit Court of the United States in New Hampshire, the question underwent a most elaborate discussion. Mr. Justice Story, after reviewing all the authorities, decided that the same construction is placed upon the statute in courts of law and equity; and if the defendant had fraudulently concealed the cause of action, he could not avail himself of the statute in either tribunal. And however much we may respect the opinions of those who have maintained the contrary doctrine, we think it may be safely said, after a careful examination of this case, that it has not been, and cannot be successfully answered, and that we may conclude, with Mr. Angell, § 186, that this construction is now given to the statute by the overwhelming weight of authority even in courts of law. (See, also, Miller v. Thompson, McL., 85.)

That this construction has been uniformly placed upon it in courts of equity, has never been questioned; and we cannot sanction the doctrine that their decisions upon it are to be entirely disregarded. It is true, that in the earlier cases, the position has been assumed by some of the chancellors, that the technical language of the statute showed that it was addressed exclusively to courts of law; and that although a court of equity might follow it by analogy, the chancellor was not bound to do so when in his opinion equity and good conscience did not require it. But when courts of equity deal with legal titles and legal demands, it could never have been the legislative intention that they should not be bound by the provisions of the statute. It would otherwise happen that a legal title or demand, utterly extinct at law, would be recognized as subsisting in equity. In Hovenden v. Lord Annesley, (5 Sch. and Lefr., 607,) it was said by Lord Redesdale, "that the statute must be taken virtually to include courts of equity; for when the legislature by statute limited proceedings at law in certain cases, and provided no express limitations in equity, it must be taken to have contemplated that equity followed the law; and, therefore, it must be taken to have virtually enacted, in the same cases, a limitation for courts of equity also." And it

cannot now be questioned that courts of equity consider themselves in granting or refusing relief in cases involving legal titles or demands of a kindred nature, as governed by the positive rules prescribed by the statute of limitations. (Kane v. Bloodgood, 7 John Ch., 90; Cholmondely v. Clinton, 2 Jac. & Walk., 1; Id., 189, note.)

The fact that we have no distinction in our courts between legal and equitable remedies, instead of repelling this uniform construction that has been given to the statute, would seem to afford a still stronger reason for leading with us to its adoption. For if, as it is justly said, there is no distinction of this character in our judicial system, and the statute must therefore be regarded as binding upon the courts whether in the exercise of their functions as legal or equitable tribunals, is it not a legitimate conclusion, that the legislature, having adopted the statute as the rule of decision for a tribunal administering both legal and equitable remedies, must have intended to have adopted it, as well with reference to the construction previously placed upon it in equity as at law, if the case before the court appropriately required it? If not, the mere fact that legal and equitable powers have been blended, with us, in a single tribunal, cuts a party off from a remedy to which we would be entitled under the same statute, if legal and equitable remedies were administered in different forums. Such is not believed to be the intention in the adoption of our judicial system.

Nor can it be said, we think, that the construction which has been given to it by the courts, is the engrafting of an additional exception to the meaning of the statute which the legislature did not think proper to make. No one claims for the court such a power. But it is certainly their duty to seek to ascertain, by an application of the ordinary and well established rules of interpretation, the meaning and intention of the legislature in its enactment; and to place upon it such construction as they intended it should have, if this can be done consistently with its provisions. The leading object of the statute was certainly to prevent fraudulent and unjust claims from being brought forward, after such a lapse of time, that evidence might no longer be within reach of the other party, by

which they could be repelled. It was not intended to deprive a party of redress, when by the act of the defendant himself he has been deprived of the opportunity of availing himself of it. To give it such a construction would make it a means of encouraging, rather than preventing frauds. It is a general principle, that no one will be permitted, in a court of justice, to claim protection by means alone of his own fraud. If the plaintiff has had knowledge of it, the statute, of course, runs against him. But if he has been kept in ignorance of his rights by the fraudulent contrivance of the defendant, does not the fraud of the latter estop him from claiming that there has been a delay in prosecuting of the suit, which his own actions have prevented from being brought at an earlier day? Every citizen is entitled, as is said in common law phraseology, to his day in court; that is, he is entitled to the use of the remedies prescribed by law; can a party be said to have had this when he is necessarily deprived of the means or opportunity of resorting to this remedy by the act of the defendant? Does not the defendant's fraud in depriving the plaintiff of his legal remedy, coupled with the original cause of action, give the plaintiff a right to relief in equity, as in other cases, when he has been deprived by the defendant of his remedy at law, and render it an immaterial question in our courts, whether the recovery is upon a new cause of action arising upon the discovery of the fraud, or upon the original demand, against which the defendant's acts had prevented the running of the statute?

Whether the construction here indicated is the one we should place upon the statute, if it were a question of first impression, unaffected by previous judicial opinion, is not now necessary to be determined. Its construction has been settled by a long series of decisions reaching back in England and America to the time of its enactment. If under these circumstances we were to give it a different interpretation from that which it has heretofore uniformly received, we think we should with much more propriety be subject to the charge of judicial legislation, than when we give it the construction which has heretofore almost invariably been given to it, although its mere letter might lead to a different conclusion. We conclude, therefore, that the fraudulent concealment from him of

the cause of action by the defendant, or the fraudulent conceal-
ment of the subject matter in litigation, (if redress could not be
had by an action for damages,) by the defendant, so that no effec-
tual suit could be prosecuted for redress, will prevent the statute
of limitations from barring the plaintiff's right of recovery.

But we are of the opinion that the charge of the court on this
subject was erroneous, because by it the jury were authorized to
infer, that, if the slaves in suit had been fraudulently concealed
or removed from the place of their original ownership, although
the defendants have held them in open, visible and *bona fide* pos-
session for a sufficient length of time to complete the statutory
bar, without knowledge of or participation in the fraud and con-
cealment upon which the plaintiffs rely, the statute would not
protect them.  Such, however, as will be seen from the cases here-
tofore referred to, is not the fact.  We have seen no case in which
the rule has been carried to this extent.  To do so would be destruc-
tive of the principle upon which it rests, which is, that if the
defendant by his own act has necessarily prevented the plaintiff
from prosecuting his suit at an earlier day, he cannot avail himself
of his own fraudulent conduct as a shield for his protection.  But
if the defendant has held such possession as fully entitles him to
the bar of the statute, he cannot be deprived of it by fraudulent
acts in which he has not participated.  If he does not rely upon
the possession of his vendors to sustain the statute, their fraud
cannot affect him.  (Croft v. Arthur, 3 Dessa., 223.)

Nor do the facts as they are presented in the record show that
there has been any fraudulent concealment of the plaintiffs' right
of action by any one.  The most that can be said is, that there
might have been trouble and difficulty in tracing into whose hands
the slaves had passed.  The plaintiffs' testimony shows that they
were sent off for sale by their most intimate friend, with the con-
sent of the grandmother, under whose care they were at the time;
that the party who took them off, and the commission merchants to
whom they were consigned for sale were well known.  If these
facts would prevent the running of the statute in favor of *bona fide*
and innocent purchasers, as the defendants below appear to be,
mere removal of property and subsequent ignorance of its locality

would be sufficient to have this effect. We think the charge as given was erroneous, and not applicable to the facts; and that the verdict was not authorized by the evidence. The judgments are therefore reversed, and the causes remanded.

Reversed and remanded.

BELL, J., did not sit in this case.