## T. P. BOREN v. J. S. BOREN ET AL.

Decided January 28, 1905.

**Limitations—Fraud—Diligence as to Discovering.**

Plaintiff sued to cancel a deed executed by him 12 years before on the ground of fraud in its procurement, alleging that he was only twenty-three years old at the time he signed it, was illiterate, and had always been led to believe by his mother and elder brother that, under the terms of his father's will he had

no interest in the land. The will was of record in the county where plaintiff lived, and showed that the mother was given only a life estate, with remainder to plaintiff. Held, that fraud in the procurement of the deed did not prevent limitations from running, as plaintiff had not exercised reasonable diligence to discover the fraud.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*W. S. Simpkins,* for appellant.—1. When a party, through his domination and influence over the defrauded party, has perpetrated the fraud, and by force of that influence, resulting from confidence, has allayed suspicion, a court of equity will not permit lapse of time to be used to his advantage. 26 Texas, 482; 61 Texas, 49; 64 Texas, 515; 35 S. W. Rep., 199; 86 Texas, 608.

2. No one can take advantage of his own fraud, though there be lapse of time, when inquiry has been lulled by his own false statements and fraudulent contrivances. 78 S. W. Rep., 963; 26 Texas, 485; 33 Fed. Rep., 314, 315.

3. Equity will not permit advantage to be taken of one who has been defrauded, by setting up lapse of time since its perpetration, where investigation has been suppressed by the perpetrator, and who seeks to take advantage of the ignorance he has fostered. 85 Fed. Rep., 63; 58 Fed. Rep., 457; 50 Texas, 127; 26 S. W. Rep., 614.

4. Whether the plaintiff should have been required to use diligence in any given case would depend upon the circumstances whether he had reasonable ground to believe that he had been imposed upon by the defendant's representations; and ignorance arising from illiteracy is a potent factor in determining it. 56 S. W. Rep., 384; 36 Fed. Rep., 147; 146 U. S., 99, 100; 65 S. W. Rep., 318; 71 S. W. Rep., 923; 90 Texas, 506; 73 Texas, 375; 69 Texas, 306, 307; 21 S. W. Rep., 1001.

*D. F. Singleton, J. T. Cole* and *Groce & Skinner,* for appellees.— 1. Fraud prevents the running of the statute of limitations only until it is discovered, or until, by the use of reasonable diligence, it might have been discovered; and if the facts stated in a pleading show that the failure to discover the fraud complained of was the result of a want of proper diligence, the question presented is for the court, notwithstanding general allegations that the discovery could not have been more seasonably made. Smith v. Talbot, 18 Texas, 782; Smith v. Fly, 24 Texas, 353; Hudson v. Wheeler, 34 Texas, 366; Bremond v. McLean, 45 Texas, 10-19; Ransome v. Bearden, 50 Texas, 120; Kuhlman v. Baker, 50 Texas, 637; Alston v. Richardson, 51 Texas, 6; Calhoun v. Burton, 64 Texas, 510; Parish v. Alson, 65 Texas, 194; Cooper v. Lee, 75 Texas, 114; Cleveland v. Carr, 40 S. W. Rep., 406; Presnall v. McLeary et al., 50 S. W. Rep., 1066; Vodrie v. Tynan, 57 S. W. Rep., 680; Gerfers v. Mecke, 67 S. W. Rep., 144.

2. Statutes of limitation are founded upon sound public policy; they are statutes of repose, the force of which should not be evaded except in cases not only of fraud, but where, clearly, there has been no laches on the part of the person complaining; hence one seeking to avoid the bar of such statutes must allege the facts fully, including those

bearing upon his efforts to learn his rights, and it must appear that he used due diligence in that regard. If it appears from his own allegations that the means were at hand to readily discover the fraud complained of, and would have been used by a person of ordinary care and prudence in the transaction of his own business, then he will be held to have had notice of everything which a proper use of such means would have disclosed, and the issue presented is for the court, and not necessarily for the jury. A party can not avail himself of the exception to the statute when the means of discovering the truth were easily in his power and were not used. See cases above cited, and, also, Callan v. Callan, 74 S. W. Rep., 965; Sheby Co. v. Bragg, 36 S. W. Rep., 600; Wood v. Carpenter, 101 U. S., 135; Felix v. Patrick, 145 U. S., 317; Ware v. Galveston City Co., 146 U. S., 102; Hardt v. Heidweyer, 152 U. S., 559.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by appellant against appellees, J. S. Boren and others, on February 21, 1900, to cancel a deed executed by appellant, his wife and mother to J. S. Boren, on the 29th day of June, 1888, conveying about eight hundred and nineteen acres of land, a part of the Joseph Boren headright league, situated in Ellis County, Texas, and for the recovery of said land so conveyed.

The answer to plaintiff's petition contained a general demurrer and numerous special exceptions, which, besides matters not regarded important on this appeal, presented the defense of limitations, and that the facts alleged by way of excuse for the delay in bringing the action were insufficient to prevent the bar of the statute. The court overruled the general demurrer, but sustained the special exceptions, and plaintiff declining to amend, the case was dismissed, and is now before us on appeal.

The petition abounds with charges of deception and fraud, upon which it is claimed the conveyance in question should be set aside, and is so voluminous that we shall attempt to give only so much thereof as is necessary to an understanding of this opinion.

It is alleged, in substance, that Joe Boren and his wife, Ann Boren, owned a league of land in Ellis County upon which they lived, having established their homestead upon it; that he gave to some of his children and sold portions of the league, so that when he died, on December 4, 1880, he owned only eight hundred and nineteen acres of the league.

Plaintiff was fifteen years of age when his father died, and was living with his parents, and continued to live with his mother, Ann Boren, until her death, July 8, 1899, and on the homestead until June 29, 1888, when a deed was executed by his mother to J. S. Boren, purporting to convey to him, J. S. Boren, the eight hundred and nineteen acres. That this deed was signed also by him, but without any consideration, and his signature to the instrument was secured by false statements, and the working of a fraudulent scheme by J. S. Boren, inducing him to sign it. That Joe Boren left a will, in which he bequeathed to his wife, Ann Boren, all the real estate, then consisting of eight hundred and nineteen acres, and all the personal estate, to be held by her for her maintenance and support during her natural life, and for the education of appellant, and at her death the remainder to go to appellant; that his mother, Ann

Boren, accepted under the will, which was duly probated by her as executrix; that she used the property for her maintenance and support, as provided under the will. And it is charged that J. S. Boren advised and directed the entire administration, and up to his mother's death exercised complete control over her; that his mother, by accepting under the will, waived her community interest; that J. S. Boren and his codefendants well knew these facts,.and that his mother only conveyed to J. S. Boren a life estate, and that this life estate ended on the death of his mother, July 8, 1899. But that, if it should be held that Mrs. Ann Boren did not waive her community right, then appellant was entitled to an undivided one-half interest in the land under the will of his father, and in this event it is prayed that he recover the four hundred acres remaining in the hands of J. S. Boren when the suit was brought, he having sold the balance of the eight hundred and nineteen acres and converted the proceeds to his own use; that J. S. Boren took an active interest in the administration of his father's estate from the death of his father until the land was conveyed to him in 1888, and exerted an influence over his mother until a few months before her death, in July, 1899. That, in matters of business, he had acquired a complete control over her, especially in reference to the estate; that, knowing his influence, he conceived the project of getting the land from her, and, with the intent to defraud his old mother and appellant out of the eight hundred and nineteen acres, he began his scheme by prejudicing his mother against her other children, who lived in the neighborhood, by making her believe that the other children were after the property, and were going to poison her; that his mother was old, afflicted with disease, and an invalid all the time, and while in this condition, with her mind and strength impaired, J. S. Boren falsely caused his mother to believe that her children were going to poison her and take away the land from her, and it could only be avoided by transferring the land to him, so that he could protect it. As a further inducement, he stated that he would borrow money on the land, buy a farm for her away from her children, and out of the neighborhood, where she could live in peace; that these statements to his mother and petitioner were absolutely false, and made with intent to induce his mother and petitioner to execute the deed to him; that his mother believed the statements to be true, and consented to abandon the old homestead for another home out of the neighborhood of her children, and, so induced, she did execute the deed to J. S. Boren; that plaintiff was utterly illiterate, and during all his youth, and up to his mother's death, his time was occupied in nursing and caring for his sick mother and working on the farm; that he was never charged with his mother's business about the estate matters, nor was he ever consulted in reference to the same; that he was never permitted to be present in the room when J. S. Boren and his mother discussed. the estate matters; that his total ignorance of the estate, and his right therein, were known by J. S. Boren and his mother, and it was never intimated by J. S. Boren or his mother that he had any interest in his father's estate; that, on the contrary, it had been repeatedly stated to him by both J. S. Boren and his mother that he had no interest whatever therein; that his mother owned it all, and he was dependent on her for what he might receive from the estate, and he had grown up in this belief; that he was con-

tinually assured by J. S. Boren and his mother, up to her death, that he had no claim upon his father's estate; that the relation of J. S. Boren to himself created implicit confidence; that he had been controlling affairs since his father's death, and otherwise assisted his mother, and, under these conditions, through a series of years, both Mrs. Ann Boren and petitioner learned to rely, and did rely with confidence, on what he said and did; that petitioner relied also upon his mother's statements, who also stated that he had no interest in the estate of his father; and that he grew up under the belief that her repeated statements, as well as those of J. S. Boren, were true; that J. S. Boren designedly misled her and petitioner, well knowing, at the time, of the provisions of the will; that petitioner was further made to believe that the statements made to his mother and himself about the threats of the children to get hold of the property, and that they would poison his mother, were true; that all of J. S. Boren's statements were false, and made in pursuance of a scheme to rob his mother and petitioner; that after these false statements had produced the fear and apprehension intended, both on the part of his mother and petitioner, he proceeded to consummate his plan in the following manner: On the 28th day of June, 1888, J. S. Boren brought a notary to his mother's house, with the deed, which he had written or caused to be written, for his mother's signature. The deed purported to be a full warranty deed, conveying the eight hundred and nineteen acres of the Boren land to J. S. Boren; that he caused his mother to sign it, and then he called petitioner and told him he had to sign the deed. He told petitioner that he did not see any use in it, and that it was only a matter of form, as he had no interest in the land, but the loan company required petitioner to sign, as he lived on the land with his mother, and the only way to get the money from the loan company to buy his mother another farm would be for him to sign it, so as to carry out his mother's wish; that he was told then what had been repeatedly stated to him before—that he had no interest in the land, and was conveying none; that, induced by these statements, and believing them to be true, and further believing that his signature was necessary to aid the said Boren to obtain a loan to carry out his purpose of procuring another home for his mother, that he signed the instrument. That at the time the deed was signed it was not read to him, nor were the contents stated to him, and he did not know until 1899 what the consideration was.

The petition then alleges that the discovery of the fraud of J. S. Boren was made in the following manner: that, being indebted, and desiring to raise money to pay it, he wished to sell a part of the one hundred acres left him by his mother's will. That, in the investigation of the title, his father's will was for the first time read and explained to him, and he was informed of his interest left by his father's will to him, and that his mother had only a life estate therein. That this led him to investigate the statements made by Boren to himself, and the charges against his brothers and sisters to induce Mrs. Boren to convey to him the eight hundred and nineteen acres, and he found that they were utterly untrue, and that he had been intentionally defrauded by J. S. Boren, whereupon he filed this suit at once.

It is apparent that the central question presented is that of limita-

tion, and that its determination turns on whether or not the facts alleged show the use of such diligence to discover the fraud complained of as demanded the submission of that issue to the jury. The action of the court on appellee's demurrers necessarily involved the ruling that such facts were not sufficient, and that, as a matter of law, reasonable diligence in the respect mentioned had not been used. Appellant, by his assignments of error, complains of the ruling of the court, and insists that his pleadings presented the question as an issue of fact for the jury, which should have been submitted to them for determination.

It is undoubtedly true that there are a class of cases in which equity avoids contracts and sets aside transactions because of some peculiar relation of confidence and trust existing between the parties. In such cases it has been said, in effect, that, where one of the parties possesses information concerning the rights of the other to property contracted for, and fails to disclose his exclusive knowledge, such failure affords good ground for the avoidance of such contract. When the fraud is unknown to the injured party, or is concealed, lapse of time will not be laches which bars relief, unless such party has failed to use reasonable diligence to discover the fraud. Nor will a party be allowed to avail himself of the statute of limitation if, by his own misrepresentation or fraud, he has prevented the other party to the transaction from ascertaining a knowledge of his right to the property involved in the controversy. But it is the well-settled doctrine in this State, in all cases, that fraud prevents the running of the statute of limitation only until the fraud is discovered, or until, by the exercise of reasonable diligence, it might have been discovered. (Munson v. Hallowell, 26 Texas, 475; Audling v. Perkins, 29 Texas, 348; Bremond v. McLean, 45 Texas, 10; Bass v. James, 83 Texas, 110.) The right of action will be deemed to have accrued when the fraud was, or by the use of reasonable diligence could have been, discovered, and limitation is put in motion from such date, and a party's right to relief will be barred when the statutory period, reckoned from that time, has expired. The rule of pleading, as indicated by the authorities, where one seeks to avoid the bar of the statute on the ground of fraud, is that he must allege the facts upon which he relies, so the court may determine from the pleadings whether he is entitled to the relief sought, assuming, as must be done on demurrer, such allegations to be true. If, as has been well said, it appears from the complainant's own allegations that the means were at hand to readily discover the fraud complained of, and such means of information would have been used by a person of ordinary care and prudence in the transaction of his own business, then he will be held to have had notice of everything which a proper use of such means would have disclosed, and a failure to avail himself of such means or avenues of information appearing, the issue presented is one of law for the decision of the court, and not a question of fact for the determination of the jury.

The question recurs, can it be said, as a matter of law, in view of the facts alleged, that appellant could have discovered, by the use of reasonable diligence, through the means and avenues open to him, the fraud alleged to have been practiced, prior to the four years next preceding the institution of this suit? We have reached the conclusion that this question must be answered in the affirmative. It appears from his own alle-

gations that he was fifteen years of age at the time of his father's death in 1880; that when his father died he owned and was living upon the land in controversy, a part of which constituted his homestead; that at the time the deed sought to be set aside was executed, he was a man, twenty-three years of age, and the head of a family. That he is alleged to have been illiterate is true, but there is no intimation or pretense by the pleadings that he was afflicted with any infirmity of either body or mind, or did not possess the usual intelligence of the average uneducated man. That his father left a will in which the land in controversy, and other portions of his estate, were bequeathed to his mother for her life, to be controlled and used by her for the benefit of herself and appellant, with remainder to him; that appellant's mother accepted under the will, which was duly probated by her as executrix; that the facts alleged fail to show any diligence whatever on the part of appellant in any effort to discover his interest in and rights to the land which he now seeks to recover, although the public record of his father's will in the county of his residence, to which he had convenient access, disclosed such interest and right.

In order to avail himself of the exception to the statute, and avoid the bar thereof on account of the fraud alleged, it was incumbent upon appellant to show by his averments that he had used reasonable diligence to detect it. This was not done, but, on the contrary, it appears that, from the date of his father's death, in December, 1880, until a short time after his mother's death, in 1899, a period of about nineteen years, during which time he had married and assumed the responsibilities and care of a family, he made no effort whatever to discover his property rights. The reason assigned for such lack of diligence and inactivity on his part is that it had been continually represented to him, and he had been taught to believe, both by his mother and appellee, Boren, that he had no interest in his father's estate. Conceding that such representations, coming from the source alleged, were calculated to suppress investigation by appellant during the years of his minority and inexperience, yet we think reasonable minds seeking the truth, and purposing to be guided thereby, could not differ as to the insufficiency of such representations to justify his inaction in the matter for so long a time after reaching his majority. There is a degree of credulity claimed for appellant, inconceivable under the facts alleged. It is insisted that, although twenty-three years of age, and laboring under no disability whatever, save illiteracy, upon representations made him by appellee, his brother, that he had no interest in his father's estate, and that his other brothers and sisters were threatening to poison his aged and invalid mother with a view of getting her property, and that it was desired by her, and necessary, to borrow money on the land with which to buy her a home distant from them, where she could live in peace, appellant was induced to sign the deed sought to be canceled, and rested supinely for about eleven years thereafter with his experience in human affairs constantly increasing, without inquiring into the truth of these unnatural charges or the statements as to his interest in the land conveyed by said deed. Again, it occurs to us that the alleged repeated assertion by appellee Boren to appellant, after the execution of the deed in question,

that appellant had no interest in his father's estate, is against, rather than in support of, the contention that he was thereby lulled into non-action or prevented from discovering the fraud. Such voluntary and needless assertions were certainly highly calculated to arouse suspicion in, and suggest to any ordinary mind an inquiry into their truth. It must be assumed, in the absence of averments to the contrary, that appellant was of sound mind; that he possessed average intelligence, and must have known that, unless deprived of it by will, he had an interest in his deceased father's estate. Such knowledge was sufficient to put him upon inquiry for the existence of such will. The allegations show that his father made a will, but, instead of depriving appellant of such interest as he might otherwise have had in his estate, vested in him a larger interest. This will was probated and became a public record, easily accessible to appellant, and open to his examination. It disclosed his right in the property in controversy, revealed the falsity of appellee's alleged statements, and exposed the fraud complained of. From the date of the probate of this will appellant had ample means of detecting the fraud alleged to have been perpetrated upon him, and by the exercise of reasonable diligence he would have seasonably discovered the truth and his right to the property claimed in this suit. Having had the means of discovery in his power, and having failed to make use of them, he can not, after so long a time, avail himself of the fraud charged to avoid the bar of the statute. We think it so conclusively appears, from the allegations of appellant's petition, that he had the means of discovering the fraud alleged, and failed to exercise that diligence required of him by law to discover it, that ordinary minds could not differ in regard to it; and that appellee's exceptions were correctly sustained. (Smith v. Talbot, 18 Texas, 780; Smith v. Fly, 24 Texas, 345; Hudson v. Wheeler, 34 Texas, 356; Kuhlman v. Baker, 50 Texas, 630; Ransome v. Bearden, 50 Texas, 119; Cooper v. Lee, 75 Texas, 114; Calhoun v. Burton, 64 Texas, 510; Parish v. Alston, 65 Texas, 194; Cleveland v. Carr, 40 S. W. Rep., 406; Presnall v. McLeary, 50 S. W. Rep., 1066; Vodrie v. Tynan, 57 S. W. Rep., 680; Gerfers v. Mecke, 67 S. W. 144; 1 Beach on Modern Equity Jur., sec. 83.) In this view of the case, the time when Mrs. Boren's life estate in the property terminated becomes immaterial, and a consideration of any other question raised by appellant's assignments unnecessary.

The judgment of the court below is affirmed.

*Affirmed.*