DEAN v. DEAN. (No. 6097.)

(Court of Civil Appeals of Texas. June 25, 1919.)

1. JUDGES ⊳15(1) — SPECIAL JUDGE — ABSENCE OF REGULAR JUDGE—"ABSENT."

Where the regular judge had agreed to go to another place and aid in war work, expecting to be absent for some time, and had notified the clerk to have the attorneys elect a special judge, he was "absent" within the meaning of Rev. St. 1911, art. 1678, authorizing election of special judge.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Absent.]

2. JUDGES ⊳25(2) — SPECIAL JUDGE — ABSENCE OF REGULAR JUDGE—TEMPORARY RETURN.

The fact that the regular judge, after the election of a special judge, merely passed through the courtroom without intention of resuming his official duties, did not terminate his absence so as to invalidate the acts of the special judge.

3. JUDGES ⊳25(2)—SPECIAL JUDGE—RETURN OF REGULAR JUDGE — COMMENCEMENT OF TRIAL.

After plaintiff had announced ready for trial, and the special judge was waiting announcement by defendant, the trial had begun, so that the special judge might proceed therewith, though the regular judge returned at that time.

4. JUDGES ⊳14—SPECIAL JUDGE—STATUTE—VALIDITY.

Rev. St. 1911, art. 1678, authorizing election of a special judge by the lawyers attending court when the regular judge is unwilling to serve, is valid, though Const. art. 5, § 7, merely authorizes the Legislature to provide for the holding of a court when the judge thereof is absent, disabled, or disqualified.

5. TRIAL ⊳352(4)—SPECIAL ISSUES—APPLICABILITY TO EVIDENCE—DECLARATIONS.

In a suit by a daughter to cancel a deed given to her father for land inherited from her

mother because the deed was secured by false statement that the land belonged to the father, the statement of the father, proved by the daughter, that he did not intend to make a gift of the land to his wife, though he had it deeded to her, was evidence of that intent, requiring the submission of a special issue as to the falsity of his statement that the land belonged to him.

6. TRIAL ⚖➝351(4) — SPECIAL ISSUES—APPLICABILITY TO EVIDENCE—DENIAL OF MISREPRESENTATION.

In a suit to set aside a deed because procured by fraud, a denial by defendant that he made any misrepresentations is evidence that the statements he made were true, requiring the submission of the issue of their truth to the jury.

7. HUSBAND AND WIFE ⚖➝49½(8)—GIFTS TO WIFE — ADMISSIBILITY OF EVIDENCE — INTENT.

In a suit to cancel a deed given by a daughter to her father for land inherited from her mother, where defendant claimed to have purchased the land with his separate estate, it was error to exclude his testimony that the reason for deeding it to his wife was to avoid administration in case of his death; the testimony being material on issue of his intention to give the land to his wife.

8. WITNESSES ⚖➝159(5, 8) — COMPETENCY — TRANSACTIONS WITH DECEASED PERSON.

Testimony by husband as to his intent in having land deeded to his wife, since deceased, does not relate to transaction with her so as to be incompetent under Rev. St. 1911, art. 3690, though testimony as to her agreement to hold it in trust for him is incompetent.

9. HUSBAND AND WIFE ⚖➝49½(8)—GIFT TO WIFE—PRESUMPTION—EVIDENCE.

Property purchased from a husband's separate estate is presumed to have been given to the wife so as to become her separate estate where the deed was taken in her name, but the presumption may be rebutted.

10. EVIDENCE ⚖➝151(1) — COMPETENCY — INTENT.

The intent with which a party does an act is a fact known to him concerning which he is competent to testify, though other witnesses cannot testify to such intent, but only to facts and circumstances evidencing intent.

11. DEEDS ⚖➝196(2)—PURCHASE FROM CHILD —FRAUD.

The rule that the burden is upon a parent purchasing property from a child to establish the fairness of the transaction does not apply where the property in fact belonged to the father, but the title was in the daughter as her mother's heir.

12. LIMITATION OF ACTIONS ⚖➝100(3, 12) — ACCRUAL OF RIGHT—RELIEF FROM FRAUD.

Limitation against a suit to secure relief from a deed procured by fraud begins to run when the fraud becomes known, and knowledge of a fact which would induce, by a prudent person, inquiry which would lead to discovery of fraud, is in law a knowledge of the fraud.

13. LIMITATION OF ACTIONS ⚖➝100(7) — ACCRUAL OF RIGHT—KNOWLEDGE OF FRAUD— CHILD.

The rule requiring diligence to discover fraud does not apply where a father defrauded his child, in which case the child can rely on the parent's representations until facts showing fraud come to knowledge.

14. LIMITATION OF ACTIONS ⚖➝39(7)—FOUR-YEAR STATUTE— CANCELLATION OF DEED.

A suit to set aside a deed procured by fraud is barred by the four-year statute of limitations.

15. APPEAL AND ERROR ⚖➝1060(3) — HARMLESS ERROR — MISCONDUCT OF COUNSEL — FAILURE OF COURT TO ACT.

Where counsel for plaintiff in his argument stated that any man pleading the statute of limitation is dishonest, it was reversible error for the court to refuse to instruct the jury to disregard the statement.

16. CANCELLATION OF INSTRUMENTS ⚖➝59— RIGHT TO RELIEF—EQUITIES.

Rev. St. 1911, art. 7761, providing for an adjustment of claims for improvements and rents and profits in suits of trespass to try title, does not apply to a suit for cancellation of a deed, but in the latter the plaintiff will be required to do equity by paying for improvements made and taxes paid by the grantee in good faith.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by Edna Dean against Chas. Dean for the cancellation of a deed. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 196 S. W. 567.

Nat Harris and Stribling & Stribling, all of Waco, for appellant.

Williams & Williams, of Waco, for appellee.

## Findings of Fact.

JENKINS, J. Appellant is the father of appellee. His first wife was her mother; she being the only child of that marriage. Appellee's mother died September 22, 1883, at which time appellee was eight years old. On June 21, 1883, appellant bought from Stephen Turner the lot in controversy, paying for the same with money given to him by his father. By direction of appellant the deed was made to his wife. The property was immediately occupied by them as a home. About a year after the death of his first wife appellant married again.

Appellee continued to live with her father and stepmother until the summer of 1895, when, on account of unpleasant relations with her stepmother, she went to live with her paternal uncle in Parsons, Kan., where she remained about three years, except that during that time she returned to Waco on account of the sickness of her father, where

---

she remained for several months. Afterwards she lived for a while with an aunt in New Hampshire. Subsequently she taught school in Chicago, in British Columbia, in Alaska, and in Seattle, where she was living up to short time before this suit was filed, November 25, 1914.

On July 26, 1894, appellee executed a deed to appellant for the land in controversy, for the recited consideration of $1 and love and affection. This suit was brought by appellee to set aside that deed, on the ground that the same was obtained by false and fraudulent representations, and to recover the lot as the only heir of her mother. Appellant denied the allegations of fraud, pleaded the three, four, five, and ten year statutes of limitation, improvements in good faith, and payment of taxes, insurance, and repairs.

The case was tried before a special judge elected by members of the bar. It was submitted to a jury on special issues, and judgment was rendered for appellee.

### Opinion.

The first and second assignments of error challenge the jurisdiction of the special judge on the grounds: (a) That the regular judge was not absent when the special judge was elected; and (b) if so, he returned before the trial of this case began.

The facts in reference to these issues are: The regular judge had been asked to go to Houston to aid in war work, and had agreed to do so, expecting to be absent for some time, but did not contemplate resigning. On June 20, 1918, he requested the clerk of the court to notify the bar that he would not hold court the remainder of that week, and to ask them to elect a special judge. They did so, and the special judge called this case for trial. Plaintiff announced ready, and defendant's counsel stated that they expected to be ready for trial the next morning, and asked that the case be passed to that time. This was done. The next morning the defendant announced ready, and the trial proceeded.

Some time during the day of the 20th, after the election of the special judge, the regular judge passed through the courtroom, going to his private chamber. This was after the special judge had adjourned court for the day.

[1-3] We hold: (a) That the regular judge was absent within the meaning of the statute when the special judge was elected; (b) that passing through the courtroom, without any intention of discharging his official duty, did not terminate his absence; (c) that by reason of the fact that the plaintiff had announced ready for trial, and the special judge was waiting announcement by defendant, the trial of the case had begun before the regular judge came to the courthouse. For which reasons we overrule the first and second assignments of error.

[4] We overrule these assignments for another reason. The regular judge, on account of private business preparatory to leaving for Houston, was unwilling to hold court on the 20th of June, or any time thereafter during the time this case was being tried. The statute on this subject is as follows:

"R. S. art. 1678. Special Judge—When and How Elected.—Whenever, on the day appointed for a term of the district court, or at any time before the expiration of the term, or the completion of all the business of the court, the judge thereof shall be absent, or shall be unable or unwilling to hold the court, there shall thereby be no failure of the term, and no failure to proceed with the business of the court, but the practicing lawyers of such court present thereat may proceed to elect from among their number a special judge of said court, who shall proceed to hold said court and conduct the business thereof, and shall have all the power and authority of the judge of said court, during such continued absence or inability, and until the completion of any business begun before such special judge."

Article 5, § 7, of the Constitution of this state reads in part as follows:

"The Legislature shall also provide for the holding of court when the judge thereof is absent, or is from any cause disabled or disqualified from presiding."

It is the contention of appellant that, inasmuch as the Constitution does not provide for the election of a special judge in the event the regular judge is "unwilling" to hold court, therefore so much of the statute as does so provide is unconstitutional. If the Constitution had contained no provision on this subject, the Legislature could undoubtedly have provided for the election of a special judge in any event it saw proper. We do not think that, because the Constitution makes it the duty of the Legislature to provide for supplying the place of the regular judge in certain specified events, it is therefore deprived of the power to so provide in other events.

[5] Appellant assigns error upon the refusal of the court to submit to the jury the following special issue:

"Was the statement made by the defendant that he (defendant) owned the property in question false and fraudulently made for the purpose of inducing the plaintiff to sign the deed?"

The testimony of both the appellee and of the appellant was, in substance, that appellant told the appellee that the property was paid for with appellant's separate money, and that he had the deed made to his wife for the reason that he had failed in business in Kansas, that he did not know that his homestead was exempt under the laws of this state, and for the further reason that he was engaged in a hazardous occupation (brakeman on railroad), and that in the event

he·should be killed his wife wished to go to St. Louis to her people, and that he had been advised that in such event she could not sell the property without·giving bond, and, being a stranger, she would be unable to do so, that it was not his intention to give the property to his wife, but, on the contrary, that it should remain his separate property, and that his wife agreed to deed it to him "when he got on·the other end," by which we understand when he got free of debt. This state- ment was made for the purpose of inducing appellee to sign the deed, and it had that ef- fect. So, if it was not true, it was fraudu- lent in law.

The court refused to submit this issue up- on the theory that the uncontroverted evi- dence showed that the statement that the property was his separate property was false, in this: The uncontroverted evidence showed that the property was paid for with the sep- arate means of the husband; that the deed was made to the wife at his instance; that from these facts the law presumes it was in- tended as a gift to her; that appellant's statement to appellee that he did not so in- tend was no evidence of the truth of such statement. (The court refused to permit ap- pellant to answer the question as to why he had the deed made to his wife.)

We think the court was in error in holding that the statement by appellant to appellee that he did not intend to make a gift of the property to his wife was no evidence of the truth of such statement. Such statement was a self-serving declaration, and could not have been put in evidence by appellant. But, hav- ing been put in evidence by appellee, we think it was entitled to be considered by the jury for what they might have considered it worth. By way of illustration: Suppose a defendant is on trial for murder. The evi- dence as to whether he killed the deceased is circumstantial. The state puts a witness on the stand who testifies that the defendant told him that he killed the deceased; that he did so in self-defense, detailing what he claimed to be the circumstances of the kill- ing, which, if true, would make a case of self-defense. The defendant does not testify. Could the court ·properly refuse to submit the issue of self-defense upon the ground that there was no evidence of such fact? We think not.

[6] We hold that the court was in error in not submitting the issue as to the truth or falsity of appellant's statement to appellee for another reason. After stating what he told his daughter, as hereinbefore set out, he was permitted to state without objection that he did not make any misrepresentations to her. If he did not, what he told her was true. If true, the property was his separate property. This testimony required the court to give the requested charge as set forth. in the third assignment of error.

[7] We sustain the fourteenth assignment of error, which complains of the action of the court in refusing to permit appellant to tes- tify that his reason for having the deed made to his wife was that he· was engaged in railroading, which was extrahazardous at that time, so that, if he should be killed, his wife could sell the property without ad- ministration, and return to her people. This testimony was material on the issue as to whether or not appellant intended to make a gift of the property to his wife, and this issue is determinative of the rights of the parties hereto.

[8] R. S. art. 3690, reads as follows:

"*In Actions by or Against Executors, etc., Cer- tain Testimony Not Allowed.*—In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

[9, 10] We do not.think that it was compe- tent for appellant to testify, over objection ·of appellee, that his wife agreed to hold the property in trust for him, for the reason that such testimony is rendered incompetent by the statute above set out. For which reason we overrule appellant's fifteenth assignment. But this would not preclude appellant from testifying as to his intention in having Tur- ner make the deed to his wife. The object of the statute is to prevent a party from tes- tifying as to alleged facts occurring in a transaction between him and a deceased per- son, which might be contradicted if such per- son was alive. In the instant case, the prop- erty being paid for with appellant's money, it became his separate property, unless he intended to give it to his wife, in which event it became her separate property. The fact that he had the deed made to his wife raises the presumption that he intended to make a gift of the property to her. But this presumption may be rebutted by com- petent evidence. The intent with which a party does an act is a fact known to him, and he is a competent witness to testify as to such fact. Berry v. State, 30 Tex. App. 423, 17 S. W. 1080. Had his wife been alive, she could not have testified that such was not his intention; for she could not have known such fact. Had she so testified, it would have been only the statement of her opinion, and not the statement of a fact. Drake v. State, 29 Tex. App. 271, 278, 15 S. W. 727, 728, 730. It is true that, had the wife of appellant been alive, she might have testified to facts tending to show that appel- lant's testimony as to his intention in having

the deed made in her name was false, such as his declaration before, at the time of, or subsequent to, the execution of the deed, if she knew any such facts. But this is true as to any other person having knowledge of such facts. Appellee was not prevented from proving by her mother, by reason of her death, what appellant's intention in the matter was, because she could not have testified to such fact had she been living.

[11] Appellee cites authority to the effect that, "if a parent buys property of its child," the burden of proving the entire fairness of the transaction is upon the parent. This well-established doctrine has no application to the instant case. One cannot, in the sense here referred to, buy from another property which such other does not own. It is only where the child has parted with something that undue influence, the exercise of which is a fraud, will be presumed where such transaction is against the interest of the child. In the instant case, if the lot was the separate property of her mother, the fact that she executed a deed thereto to her father without any consideration would conclusively establish fraud upon the part of appellant. On the other hand, if the lot was in fact the separate property of her father, she not only parted with nothing in executing such deed, but she was discharging a moral obligation which she owed to her father in assisting him to remove a cloud from the title to his property. The fact that appellee is the child of appellant is not material on the issue as to whether the lot was the separate property of her mother or the separate property of her father.

The fact that appellee was the child of appellant, only 19 years of age, living with her father, and under his influence, is, however, material upon another issue of this case, namely, the issue of limitation.

[12, 13] Where a deed has been obtained by fraud, limitation will begin to run when such fraud is discovered. Knowledge of such fact as would put a person of ordinary prudence upon inquiry, which, if seasonably pursued, would lead to a discovery of the fraud, is in law knowledge of such fraud. Ordinarily a person who had been induced by fraud to part with his property must use reasonable diligence to discover such fraud. Kuhlman v. Baker, 50 Tex. 636; Bass v. James, 83 Tex. 110, 18 S. W. 336; Smith v. Fly, 24 Tex. 350, 76 Am. Dec. 109; Munson v. Hallowell, 26 Tex. 475, 84 Am. Dec. 582; Alston v. Richardson, 51 Tex. 6; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48; Powell v.

March, 169 S. W. 938. This, however, does not apply where the relation of trust and confidence exists as between father and child, and where such trust and confidence is the means whereby the fraud was consummated. In such case the child may continue to trust the father, without using any means to discover the fraud until it has, without such inquiry, come into possession of such facts as would put an ordinarily prudent person upon inquiry, at which time, and not before, if the child has arrived at the age of maturity, it is bound, as any other person would be, to reasonably pursue such inquiry, and at which time, and not before, the statute of limitations will begin to run. Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 963.

[14] The four-year statute of limitation is applicable in a suit to set aside a deed procured by fraud. R. S. art. 5690; Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Keenon v. Miller, 143 S. W. 986; Groesbeck v. Crow, 91 Tex. 74, 40 S. W. 1028; Hamilton v. Green, 166 S. W. 97; Gilmore v. O'Neil, 139 S. W. 1162.

[15] The statement by counsel in his argument to the jury that any man who would plead the statute of limitation is dishonest, together with the fact that the court refused to instruct the jury to disregard the same, constitutes reversible error. There was strong evidence in support of such plea. The statement of counsel was calculated to prejudice the jury against the appellant. The jury found against him on this issue.

[16] This is not a suit of trespass to try title, and therefore article 7761, R. S., does not apply. This being an equitable proceeding to set aside a deed, the appellee, if she recovers, will be required to do equity. The jury found that appellant had placed improvements on the property in good faith, and that he had spent certain sums for taxes, insurance, and repairs; also that he had received certain rents from the property. Such being the case, the court erred in not adjusting the equities, and rendering judgment for appellant for such sum as would recompense him for his expenditures.

There are some other assignments which we deem it unnecessary to pass upon.

For the reasons herein stated, the judgment of the trial court herein is reversed, and the cause is remanded for a new trial.

Reversed and remanded.