### HUTHSING *v.* BOSQUET and others.

(*Circuit Court, D. Iowa.*   February, 1882.)

PUBLIC OFFICER—CONTRACT WITH NON-RESIDENT—KNOWLEDGE OF LAW PRESUMED.

Where a party in one state makes a contract with direct reference to the law of another state, he must be held to know the law of that state.

*Huthsing* v. *Bousquet,* 7 FED. REP. 833, reaffirmed.

This case was submitted on the following agreed statement of facts, after the filing of the opinion, reported in 7 FED. REP. 833:

"It is hereby stipulated and agreed, by and between the parties to the above-entitled action, that said cause be submitted for determination and judgment to the court, and that in the determination of said cause the following agreed statement of facts shall be taken and considered as true, without further proof thereof, but subject to any legal objection that may be urged in argument by either party on the ground of incompetency, irrelevancy, or immateriality.

"1. That the plaintiff and said Lawler are now, and have continuously been, citizens and residents of the state of Missouri, since prior to the year A. D. 1876, and that the defendants are, and for many years have been, residents and citizens of the state of Iowa.

"2. That in the year A. D. 1876 the board of supervisors of Marion county, in the state of Iowa, was composed of three members only, and that the defendants, Herman F. Bosquet, A. A. Welsher, and one H. D. Lucas, being the chairman of said board. That the term of office of said Lucas expired on the thirty-first day of December, 1876, and he was succeeded by the defendant, John B. Ely, who served as such supervisor for three years next succeeding thereafter.

"3. That on the tenth day of October, 1876, the office of the treasurer of said Marion county was robbed of about ten thousand and five hundred dollars ($10,500) of money, belonging to said county, by two men, who entered the said office and by threats compelled the treasurer of said county to open the safe and deliver said money to them, and that John R. Barcus and Harry Williams are the persons who committed said robbery.

"4. That on the morning of the eleventh day of October, 1876, said Bosquet, Welsher, and Lucas met at Knoxville, the county seat of said county, without notice or request therefor having been given, and without any of the steps having been taken as provided in section 301 of the Code of Iowa for the holding of special meetings of boards of supervisors, but having convened, with other citizens, solely on account of said robbery, for the purpose of taking such action in relation thereto as might be deemed best, they, the said Bosquet, Welsher, and Lucas, then and there, while thus convened, issued and caused to be published and circulated the offer of reward referred to and set out in the original and substituted petition herein, and sent a copy thereof to the chief of police of the city of St. Louis, Missouri, which was seen and read by the plaintiff and by said Patrick Lawler on or before the sixteenth day of November, 1876. It is agreed that the said Bosquet, Welsher, and Lucas, at the time they issued the said circular, did not meet or organize as a board, nor pass any resolution in any formal or informal manner adopting said offer of reward, nor make any record of their proceedings, but were individually present in the treasurer's office, and merely consulted together as to the propriety of making said offer, and agreed thereto, whereupon the said offer was written out and signed by said H. D. Lucas, chairman, in the presence of the

defendants Bosquet and Welsher, and the said offer was, by the direction of the said Bosquet, Welsher, and Lucas, printed and circulated.

"5. That in making and circulating said offer of reward said Bosquet, Welsher, and Lucas acted in good faith, believing they had the right and power to make the same on behalf of said county in the manner as herein stated, and that if the terms of said offer were complied with it would entitle the party who might perform such service to the reward therein offered from said county, but did not intend to make such offer as a personal offer by said board or its individual members in their individual capacity. Nor did said supervisors intend that said circular should be understood to be a personal offer by them, but intended to make the same in their official capacity only, as the board of supervisors of said Marion county.

"6. That after the plaintiff and the said Lawler had seen and read said circular, and with a view to obtain said reward,—to-wit, on or about the sixteenth day of November, 1876,—they recovered about the sum of ($3,071) three thousand and seventy-one dollars of the said stolen funds of said county in the city of St. Louis, Missouri, and placed the same in the hands of the chief of police of said city, subject to the order of said county; and also, on or about the twentieth day of November, 1876, arrested the said John R. Barcus at Atchison, in the state of Kansas, and in a few days thereafter delivered him over into the hands of the sheriff of said Marion county. That said Barcus was duly convicted of said robbery in January, 1877, and is now serving out his sentence in the penitentiary.

"7. That when said printed circular came to the notice of plaintiff and said Lawler, and when they performed the services herein mentioned and referred to, they and each of them understood and relied on such circular and the offer of reward therein contained as being made solely on behalf of said Marion county, and not on behalf of the supervisors who issued and published the same. That they and each of them expected the compensation promised in said circular to be paid by said county, and not by said supervisors personally, nor by any of them. That neither plaintiff nor said Lawler knew the name of any member of the board of supervisors of said county, except said H. D. Lucas, until after they had performed all the services for which compensation is claimed in this action, and had, at the time of said services, no actual knowledge, information, or belief that under the laws of Iowa supervisors were not legally authorized to issue said offer of reward, but had only such knowledge as imputed by law.

"8. That about the month of January or February, 1877, plaintiff and said Lawler filed, with the auditor of said Marion county, an account (a copy of which is hereto annexed and marked A) against said county, duly verified, claiming of said county the reward sued for in this action, and also for expenses; and that afterwards said plaintiff and said Lawler sued said Marion county for the reward sued for herein, and also for the reward on the money recovered by them, and for their said expenses; and that, upon issues joined in said action in a court of competent jurisdiction, said plaintiff and said Lawler were adjudged to be entitled to recover of said Marion county about the sum of $1,000 as reward for the recovery of said $3,071, and about the sum of ($675) six hundred and seventy-five dollars for expenses in and about the recovery of the same, and in the apprehension and delivery of said Barcus. But the question of the liability of said county to pay the reward sued for herein, for the arrest of said Barcus, was not adjudicated in said action, and the claim herein is not barred by reason of any former adjudication thereon, but the same was withdrawn before judgment in said case.

"9. That the acts of the supervisors, in issuing and publishing said offer of reward, were duly ratified by the said board in full and regular session, in 1877, and by repeated acts thereafter, as shown by the annexed resolutions,

marked B and C and D and E, which are made a part hereof, and which, it is agreed, were regularly and duly adopted by said board and spread upon its record.

"10. The court may take notice and give force to any statutes of the state of Missouri or decisions of the law court of said state, cited in argument by either party herein, the same as though offered in evidence, and subject to the same objections as are provided for in section 1 hereof.

"11. That in case the plaintiff is entitled to recover herein for the arrest and conviction of said Lucas, it is agreed that he is to have judgment in the sum of $2,500, and interest from May 1, 1877, being one-half the reward offered, if the court shall hold that said reward is apportionable, and if that is material.

"12. That so far as said petition herein relates to the claim for the apprehension and conviction of said Williams the same is to stand for trial separately, and subsequently hereto.

"13. That said offer of reward was issued for circulation and information of the public, and to induce parties to act thereon, and that said Huthsing and Lawler performed the work and services set forth in the petition, resulting in the arrest of John R. Barcus, as further set forth in section 6 hereof."

*Whiting S. Clark,* for plaintiff.

*Anderson & Kinkead,* for defendants.

McCRARY, J. The plaintiff now seeks, by his new averments and the agreed statement, to put his case upon the ground of fraud. It is not pretended that there was any fraudulent intent on the part of the defendants. That they, in fact, acted in perfect good faith, intending to bind the county, and believing they had power to do so, is not questioned. How, then, does the plaintiff attempt to make a case of fraud? They say the defendants are conclusively presumed to have known the law of Iowa, and therefore must be held to have offered the reward knowing that the county would not be bound. They must, therefore, have intended to mislead and deceive the plaintiff. Now it is manifest that this reasoning is purely technical. It aims to charge the defendants upon a case of fraud in law when there was no fraud in fact. It would be a strange result in an action at law to make a defendant responsible upon a charge of fraud while admitting that he, in fact, acted in perfect good faith.

It is, of course, necessary to this argument for the plaintiff to assume that he did not know the law of Iowa, because if he did know the law he was not deceived. But in my opinion this is untenable. When a party in one state makes a contract with direct reference to the law of another state, I think he must be held to know the law of that state. In all the county bond cases it was held by the supreme court that the non-resident holder for value without notice, of county bonds, must take notice of the law of the state conferring the power to execute them, and that if the law of the state conferred no power the innocent purchaser and holder could not recover. He was bound to know the law of the state under which the contract was made. He could not be innocent by reason of his ignorance in that regard. It never entered the mind of any one to say that, being a citizen of

another state, he was not presumed to know the law of the state giving the authority to issue the bonds; and no one ever dreamed that the county officers, if they acted *ultra vires,* bound themselves personally. Why, then, was not the plaintiff in the present case bound to take notice of the law of Iowa conferring power upon the board of supervisors to offer the reward? The plaintiff saw, by the very terms of the offer, that the board intended to bind the county and not to make themselves personally liable. Why was he not bound to take notice of the law of Iowa, and see whether or not it gave the board power to make the contract upon which he sues?

If the defendants in this case can be made responsible for fraud, upon the theory that they knew the law while the plaintiff was ignorant of it, I can see no reason why the county officers who may issue bonds in perfect good faith under a mistake of the law may not be made personally responsible upon them by any non-resident purchaser for value.

The plaintiff made a contract with the county of Marion, not with the defendants as individuals. He did service to the county, not to the defendants individually. And now, finding he cannot recover from the county, seeks to change the whole nature of the transaction. He seeks to make parties liable with whom he had no contract, and for whom he performed no service.

Upon a careful reconsideration of the whole case by both judges we are prepared to reaffirm what was said in the original opinion, and to hold that there is nothing in the amended petition upon which to base a claim for damages in favor of the plaintiff and against the defendants.

The demurrer to the amended petition is therefore sustained, both judges concurring.