### J. H. COBB v. FIRST NATIONAL BANK OF DECATUR.

No. 593.—Decided November 18, 1897.

1. **Attorney's Fees—Settlement by Client—Limitation.**
Where the client settles a controversy without knowledge of the attorney conducting the litigation and continuing to perform services, limitation does not begin to run against the claim of the latter for compensation until he has notice of the settlement. (P. 229.)

2. **Same.**
An attorney obtained judgment for a bank for the amount of a note and attorney's fees stipulated therein, which fees by the agreement were to belong to him. Afterwards the bank, without concealment and without knowledge by those then managing it of the attorney's interest therein, settled the judgment by compromise. Held, that the bank occupied a relation of trust to its attorney with reference to the judgment, and limitation would not run in its favor against the claim for the attorney's fees until he was notified of the settlement. (Pp. 227 to 231.)

QUESTION CERTIFIED from Court of Civil Appeals for Second District, in an appeal from Wise County.

*Will A. Miller,* for appellant, and *J. H. Cobb,* in pro. per.—Where an attorney is employed in a suit on a contingent fee to be paid out of the subject matter of the litigation, and the litigation is ended by a compromise made by his client without his knowledge, his cause of action for such fee does not accrue till he is notified or informed of such compromise and settlement. Henrietta Nat. Bk. v. Barrett, 25 S. W. Rep., 456; Lichty v. Hugus, 55 Pa. St., 436.

(1) The relation between attorney and client is one of trust and con-

fidence, and whenever a right accrues in favor of one against the other, out of the subject matter of the relationship, mere silence on the part of the one against whom such right exists, coupled with want of knowledge on the part of the other of the existence of such right, will prevent the statute of limitation from running. (2) When an attorney is employed to conduct litigation for a contingent fee of a part of the subject matter of the suit, the contract contemplates a continuing employment until a full realization of the fruits of the suit; and if the client, before such contingency, puts an end to the employment by compromise or settlement, without the knowledge or consent of the attorney, his cause of action for his services does not accrue until he is notified of such compromise. (3) Where by the contract of employment, the attorney becomes the part owner of a money judgment in favor of his client, such client is the agent, or trustee of the attorney for the receiving of the proceeds of such judgment; and if the client receives the proceeds of such judgment without the attorney's knowledge, limitation will not begin to run against an action in favor of the attorney until notice thereof. (4) Mere silence on the part of one whose duty it is to speak is a fraudulent concealment; and a fraudulent concealment of a cause of action, or such fraud as conceals itself, prevents the running of limitation. Bank v. Barrett, 25 S. W. Rep., 456; Lichty v. Hugus, 55 Pa. St., 436; Littlejohn v. Gordon, 32 Miss., 235; Buckner v. Calcote, 28 Miss., 432; Railway v. Gay, 30 S. W. Rep., 543; 27 S. W. Rep., 743; Bates v. Preble, 151 U. S., 150; Shellenberger v. Ransom, 25 Law Rep. Ann., 566, note; Bailey v. Glover, 21 Wall., 342; Lewey v. Coke Co., 28 Law. Rep. Ann., 283.

*R. E. Carswell,* for appellee.—If any trust existed between appellee and appellant in reference to the proceeds of said judgment, the same was merely a constructive trust and appellant's cause of action for a breach of the same accrued at the time the judgment was released, or collected and appropriated by appellee, on January 27, 1894. Tinnen v. Mebane, 10 Texas, 246; Wingate v. Wingate, 11 Texas, 433; Kennedy v. Baker, 59 Texas, 150; Angell on Limitations, sec. 178.

The statute of limitations began to run against appellant's claim on January 27, 1894, there being no such fraudulent concealment on appellee's part as was reasonably calculated to prevent a discovery by appellant, if he had used reasonable diligence. Tinnon v. Mebane, 10 Texas, 256; Connoly v. Hammond, 58 Texas, 17; Angell on Limitations, sec. 187.

GAINES, CHIEF JUSTICE.—The following question has been certified for our determination:

"In this case, of which we have final jurisdiction, we deem it advisable, in view of the dissent of one member of this court, to now, at the suggestion of the appellant, pending the motion for rehearing, certify to your honors for decision the single issue of law involved, which

is, whether, upon the facts stated in the court's findings of fact set out in appellant's brief, pages 2 to 5, inclusive, which we refer to and adopt, the cause of action declared on by appellant, in petition filed November 24th, 1896, was barred by limitation, as held by the trial court?

"Appellant, after alleging his title to a one-eleventh interest in the judgment as set forth in the findings of fact, stated his cause of action as follows: 'Plaintiff further shows that heretofore, to-wit on or about the 1st day of July, 1895, defendant, in consideration of the payment thereof by said Sugg Bros., and without the knowledge or consent of plaintiff, released and acknowledged a discharge and satisfaction of said judgment in full, said judgment then amounting to about the sum of $4,528.06; that such payment, release and discharge was fraudulently concealed from plaintiff by defendant, and was kept concealed so as to enable it to appropriate the whole of the proceeds of said judgment to its own use and benefit, and plaintiff did not know of same until about the 10th day of November, 1896; that notwithstanding plaintiff's interest in and ownership of a part of said judgment, defendant appropriated the whole of the proceeds thereof to its own use and benefit, and though often requested, has failed and refused, and still fails and refuses, to pay plaintiff his said money, or any part thereof; that by occasion of the premises defendant became and is indebted to the plaintiff in the sum of $411.60, with interest thereon from the date of said discharge and satisfaction of said judgment, at the rate of six per cent per annum. Wherefore plaintiff sues and prays for judgment for his said debt, interest, costs of suit, and general relief.'

"As the requisite time had elapsed to complete the bar, unless appellee's conduct was such as to prevent the statute from running, the real question, it seems to us, to be decided is, whether, upon the facts set forth in the court's findings, the cause of action was so fraudulently concealed from appellant as to excuse him from bringing his suit in time to escape the bar of the statute of limitations?"

We will state so much of the findings of the trial court as bear upon the question certified. The appellant, Cobb, and one Donald were partners in the practice of law under the name of Donald & Cobb. The appellee was the owner of a note for $2000 made by Sugg Brothers, which stipulated for the payment of ten per cent of the amount as attorneys' fees in the event suit should be brought for its collection. Having found the foregoing facts, the court proceeded to find as follows:

"(3) The $2000 note mentioned above was not paid when due, and was placed in the hands of Donald & Cobb under an agreement that they were to sue upon and obtain judgment thereon for the attorney's fees stipulated for therein, and that said attorney's fees was their property.

"(4) On February 5th, 1888, said note was put into judgment in favor of the bank, including principal, interest and ten per cent attorney's fees.

"(5) Execution was issued upon this judgment within twelve months from its date, but nothing collected.

"(6) Sugg Bros. from that time till about 1896 were residents of the Indian Territory, and owned a herd of cattle there, but owned no property in Texas, and their property in the Indian Territory was in the names of other parties.

\*    \*    \*

"(8) About January 1st, 1890, Cobb removed to Wichita Falls, Texas, where he has since continued to reside, except for the period of about fifteen months from June 28th, 1892, to October 22nd, 1893, when he was out of the State in Colorado and the State of Washington.

"(9) No collections were made on said judgment until January 27th, 1894, when the bank and Sugg compromised the same, Sugg Bros. paying the sum of $2675 in cash, which was received by the bank in full settlement of the judgment which then amounted, principal, interest and attorney's fees to $4112.87, and gave a receipt in full for the same, and also caused to be written on the margin of the judgment roll a receipt stating the amount received and that it was in full settlement of the judgment.

\*    \*    \*

"(11) The bank never notified Cobb of the collection of said judgment till about November 12th, 1896, and he had no actual notice of the collection till that time.

"(12) On November 2nd, 1896, Cobb wrote to the bank informing it that the said judgment against Sugg Bros. could then be collected. To this letter no reply was made, and shortly afterwards Cobb came to Decatur to see the bank about taking steps to collect the judgment, and was then for the first time notified by the bank that the judgment had been settled.

"(13) Cobb never at any time prior to November, 1896, made any inquiry about said judgment and no effort to ascertain its condition.

"(14) The bank did nothing to conceal from Cobb the fact of the settlement of said judgment, in fact, the management of the bank having changed hands, none of the officers at that time knew that Cobb had any interest in said judgment and the fact of the settlement was publicly talked about and publicly known at Decatur. While Waggoner was president of the bank all the time, he had nothing to do with the management and knew nothing of Cobb's interest in the judgment when the settlement was made."

The court also found that by virtue of a contract between Donald and the appellant, the latter became the owner of the claim in controversy.

Where an attorney has been employed to conduct a litigation and the client settles the controversy without his knowledge, the attorney continuing to perform the services, it has been held that the statute of limitations does not begin to run against an action for his compensation until he has notice of the settlement. This was so decided by the Court

of Civil Appeals for the Second Supreme Judicial District in the case of the Henrietta National Bank against Barrett, (25 S. W. Rep., 456) in which a writ of error was refused by this court. It has also been so ruled by the Supreme Court of Pennsylvania. Lichty v. Hugus, 55 Pa. St., 434. Since it appears that the appellant continued to work upon the case without knowledge of the settlement, until a time within two years before the suit was brought, it would seem that this ought to settle the question of limitation against the appellee. But it may be that this is not the precise question which we are called upon to answer.

From the third finding of fact by the trial court, it appears that under the contract between the bank and the attorneys, the latter were not merely entitled to demand from the former a percentage upon the amount recovered upon the debt. They were to have the sum of ten per cent which was to be recovered as attorney's fees as their property. Therefore one-eleventh of the judgment became in equity their property, and so remained so long at least as they continued to perform their part of the contract. The position of an attorney to his client is one of confidence and trust; but the relation is not reciprocal. Ordinarily the attorney reposes no trust in his client. But where by virtue of the contract between them the attorney as a compensation for his services becomes the owner of a part of a judgment, which stands in the client's name and which the latter has the power to collect and discharge, there is a trust confided. . In such a case the client commits a breach of his trust, when, without the knowledge of his attorney, he collects the judgment and fails either to account to him or to advise him of his action. In general, where a cause of action. is based upon an implied trust, the statute of limitations begins to run from the time the right of action accrues. And again, where a fraudulent concealment of a cause of action is relied on to suspend the operation of the statute, some active artifice to suppress a knowledge of the fact must be shown. Mere failure to disclose is not sufficient. But where there is fraud in the very transaction out of which the cause of action arises, or where there is a relation of confidence between the parties and it is the duty of the defendant to disclose the fact, then the statute will not run until the fraud is discovered, or ought by the use of reasonable diligence to have been discovered. Bates v. Preble, 151 U. S., 149. In Lichty v. Hugus, above cited, the court say: "The morality of the relation demanded this qualification, for as counsel owe good fidelity to clients, so the client is bound to make fair and reasonable compensation to his counsel, and it is fraud upon the counsel for the client to settle the suit without his knowledge, to withhold his fees, and then to set up the Statute of Limitations against him." Since in this case the entire judgment was taken in the name of the bank and the bank had the power to collect the money and discharge the debt, it is apparent that the attorneys reposed confidence in the bank and had the right to rely upon its good faith in accounting for their share in the event it collected the money. It was a fraud on part of the bank not to do so. We therefore think that the statute did

not begin to run until the appellant was apprised that the judgment had been discharged.

We think that under the facts found by the trial court the action was not barred and our opinion will be so certified.