**GEO. W. ARMSTRONG & CO., Inc., v.
WAGGOMAN et al.   (No. 2532.)**

(Court of Civil Appeals of Texas.   Texarkana.
April 15, 1922.   Rehearing Denied
April 20, 1922.)

Limitation of actions ⬲102(2)—Mere confidence reposed does not create trust relationship tolling statute.

Where plaintiff paid part of a note of a corporation in which he was a shareholder in 1910, and was to be paid in stock, the fact that he relied on the corporation to issue a certificate to him did not toll the two-year statute on plaintiff's failure to inspect records or make inquiry about the issue of the stock; there being no trust relationship arising from plaintiff's mere reliance upon and confidence in the corporation.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by B. L. Waggoman and others against Geo. W. Armstrong & Co., Inc., and others. From judgment for plaintiff, the named defendant appeals. Reversed.

The suit was commenced August 2, 1918. Appellee Waggoman was the plaintiff, and appellant and appellee Geo. W. Armstrong were the defendants. Appellees William Bryce, William Capps, and C. W. Harkrider were made parties at the instance, it seems, of the defendants.

In his petition appellee Waggoman alleged that the Texas Rolling Mills Company, a corporation from 1908 or 1909, by an amendment of its charter in 1916 or 1917 changed its name to "Geo. W. Armstrong & Co., Inc.," under which name it continued to do business (or, if he was mistaken about the mill company continuing business under the new name, that Geo. W. Armstrong & Co., Inc., "succeeded to all the assets" and was "liable for all the debts and obligations" of the mill company; that appellee Geo. W. Armstrong at the times (stated and all other times) mentioned in the petition was the "president of said corporation, and owned, and still owns, practically all of the stock of said corporation"; that on February 1, 1914,

or some time prior thereto, "the exact date of which" he did not know, it was agreed between appellee and the mill company—

"and its duly authorized representatives and all of its stockholders, including said Geo. W. Armstrong, that for a valuable consideration fully paid and satisfied by this plaintiff to the said Texas Rolling Mill Company, there should be issued and delivered to plaintiff $1,250 of the capital stock of said Texas Rolling Mill Company; that it was agreed between said Armstrong, acting for himself and his said corporation, and the other duly authorized representatives of said corporation, and plaintiff, that said stock should be issued immediately after plaintiff has paid for same as aforesaid, or within a reasonable time thereafter. It was further agreed between said parties that said stock should remain with said defendants and in the stock book of said corporation, and that the same should be delivered to plaintiff when and whenever he might call for same; that plaintiff had other certificates of stock in said corporation which had been left with said defendants, and in the stock book of said corporation, and which remained with them for a long period of time, and that he had no occasion to make demand for said $1,250 of said stock, and made no demand for same until about December, 1916, or in the early part of 1917; that plaintiff had for many years been intimately acquainted and had been doing business with said Armstrong and the other officers of said corporation, and had owned other stock in said corporation, and believed implicitly that said above-named defendants, and each of them, would carry out their said agreement to immediately deliver said stock properly executed to plaintiff whenever the same might be demanded or requested by him; that, so believing and relying on said agreement and not having any knowledge of any character that defendants would not in good faith carry out said agreement, plaintiff allowed said stock to remain with said defendants as aforesaid."

Said appellee Waggoman then alleged that he learned (when, not stated otherwise than that it was "some time" in December, 1916, or the early part of 1917) that the stock had not been issued to him, and that he thereafter made repeated demands upon Armstrong "personally and as president of said corporation" to issue and deliver same to him, and that said Armstrong "for himself and on behalf of said corporation" finally, a few months before the suit was commenced, refused to comply with the demand. He then alleged that after such refusal dividends amounting to $300 accrued on the stock he was entitled to. He prayed judgment requiring the defendants to issue and deliver the stock to him, and for the $300 dividends. "In the alternative" he prayed for judgment for said dividends and for $5,000 as the market value of the stock. He then alleged, "in the alternative," if he was not entitled to that relief, that defendants "converted the stock to their own use on or about March 1, 1918," and prayed judgment for its value at that time, alleged to be $2,500, and for the

$300 dividends. Finally he prayed judgment for the $1,250 (and interest thereon) he paid for the stock, if the court should determine he was not entitled to either of the other recoveries he sought.

In its answer Geo. W. Armstrong & Co., Inc., excepted to the petition on the ground that it appeared therefrom that Waggoman's cause of action against it was barred by the statute of limitations of two years, and by a plea set up said statute and the statute of limitations of four years as a bar to the recovery sought against it. Geo. W. Armstrong and Capps and Bryce also filed answers, the contents of which are of no importance in disposing of the appeal, in view of the judgment rendered, which denied a recovery against them and Harkrider, while awarding Waggoman a recovery of $3,681.13 against Geo. W. Armstrong & Co., Inc., who alone prosecutes the appeal.

It appeared from the testimony that appellee Waggoman, Geo. W. Armstrong, William Capps, William Bryce, M. H. Mills, C. W. Harkrider, and F. P. Berry owned practically all the capital stock of the Fort Worth Iron & Steel Company, a corporation, which owed debts amounting to $180,000 or $190,000. In 1908 the parties named agreed on a reorganization of the company, which was accomplished by the sale of its property to another corporation, the Texas Rolling Mill Company, organized in July, 1908, to take over its property and business. Appellee Waggoman and all the other parties mentioned above as holders of stock in the iron and steel company were stockholders in the new company. A part of the indebtedness of the iron and steel company assumed by the mill company was evidenced by a note made by the iron and steel company to one Godair, on which appellee Waggoman and said Capps, Bryce, Mills, Harkrider, and Berry were liable as indorsers. On July 16, 1910, or a day not shown prior to that day, appellee Waggoman, and Capps, Bryce, Mills, Harkrider, and Berry paid a balance of $7,500 then due on the note (each of them paying $1,250 of said balance) on the faith of a promise that stock of the mill company in the amount of $1,250 would be issued to each of them. The stock was issued on said July 16, 1910, and October 28, 1910, but by mistake, it is inferred, none of it was issued to appellee Waggoman, but $1,500, instead of $1,250, of it was issued to each of the other parties, to wit, Capps, Bryce, Mills, Harkrider, and Berry. The $7,500 stock issued to the parties named was all of appellant's stock remaining unissued at the time. Appellee Waggoman testified that Mills, representing Geo. W. Armstrong (who, it seems, held the stock as trustee) or the mill company, promised that the $1,250 stock he was entitled to would be issued and left in the stock book of the company until he called for it; that he relied on the promise, and

did not know until the latter part of 1916 or first part of 1917 that the stock had not been issued to him. He then made a demand on Geo. W. Armstrong, the president of the mill company, which in 1917 by amendment of its charter changed its name to Geo. W. Armstrong & Co., Inc., for the issuance of the stock to him. This demand, he testified, was finally refused two or three months before he instituted this suit.

The jury found on special issues submitted to them that the promise to appellee Waggoman that the mill company would issue $1,250 of its stock to him when he paid $1,250 on the Godair note, and hold the stock for him until he called for it, was made by "an authorized agent or officer" of the mill company, and that appellee Waggoman relied on the promise.

R. C. Armstrong, Jr., and Bradley, Burns, Christian & Bradley, all of Fort Worth, for appellant.

McCart, Curtis & McCart, of Fort Worth, for appellees.

WILLSON, C. J. (after stating the facts as above). As we think it appeared as a matter of law, in any view taken of the testimony, that appellee Waggoman's cause of action was barred by the two-year statute of limitations long before he commenced his suit, it will not be necessary, in disposing of the appeal, to consider other questions presented by the assignments.

The contention of said appellee to the contrary of the conclusion reached by us is on the theory, it seems, that his case in its facts was within the rule applicable to express trusts, according to which the statute does not begin to run in favor of the trustee until he repudiates the trust and the beneficiary has notice thereof. As we understand the facts established by the testimony they do not make that kind of a case. Instead they show it to be the ordinary one arising from the breach of a contract involving no element of trust different from that involved in most, if not all, contracts.

What appellant agreed to do, if anything, was to issue a stock certificate for $1,250 to appellee when he and the other indorsers on the Godair note paid the balance due on it, and after issuing the certificate to. hold it for him. It did not issue the certificate to appellee, but issued it to other parties, and so breached its contract. A cause of action at once arose in said appellee's favor. The only pretense of a reason appearing in the testimony why the statute of limitations did not then begin to run against said appellee was such as was predicable on confidence he had in the mill company. It has never been held, we think, that mere confidence reposed by one party to a contract in performance by the other party of his obligation under it had the effect to toll the statute in favor of the party reposing the confidence.

240 S.W.—44

'If it appeared that the mill company agreed to sell said appellee an interest it had not already disposed of in its property and business, it might be plausibly contended that he became the owner of such interest July 16, 1910, when he paid the $1,250 on the note, without respect to the fact that a certificate evidencing the interest was never issued to him; that the mill company and appellant thereafter held the interest in trust for him; and therefore that the principle invoked applied to the case. And it might with as good, or better, reason be contended it applied, if it appeared that the mill company issued the stock certificate to him as agreed upon, and after issuing it breached an undertaking on its part to hold same for him until he called for it.

But, as we have seen, the mill company and appellant never became a trustee in either of the ways suggested. The most favorable view to appellee which can be taken of the testimony is that the mill company through its officers and agents practiced a fraud on him when they induced him to make the payment on the note by promising to issue the stock certificate to him and then to hold it until he called for it. In that view of the testimony it is doubtless true that the statute would not begin to run against said appellee' until he discovered the fraud, or in the exercise of reasonable diligence would have discovered it.

That he did not exercise any diligence whatever during more than six years which intervened between the time (July 16, 1910) he had a right to demand the issuance and delivery of the certificate and the time (the latter part of 1916 or early part of 1917) when he learned same had not been issued to him we think conclusively appeared. For during all that time, as the owner of other stock in the mill company, he had a right to inspect the records of that company, which showed that a stock certificate had never been issued to him, and that on October 28, 1910, the company issued to other persons all the stock it could lawfully issue. No reason why he did not inspect said records nor make any inquiry whatever during that time to ascertain if the stock certificate had been issued to him as agreed upon appears in the testimony, except that referable to confidence he had in the company's having performed its undertaking under the contract and to the fact that stock in the mill company was then of little value. Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48; Cleveland v. Carr (Tex. Civ. App.) 40 S. W. 406; Prosser v. Bank (Tex. Civ. App.) 134 S. W. 781; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807.

In the case first cited it appeared that the plaintiff was induced by his older brother, who at the death of their father had taken the control and management of the family affairs, and in whom the plaintiff had im-

plicit confidence, to convey land he owned as devisee under his father's will, but did not know he owned, to his brother, by fraudulent representations of the latter that plaintiff did not own an interest in the land, but that it was necessary for him to execute the deed to satisfy a loan company from whom the older brother wished to procure a loan to buy a home for their mother. In sustaining the contention of the defendant that the plaintiff's cause of action was barred by the statute of limitations, the court said, with reference to the plaintiff's claim that he was ignorant of the fact that the land was devised to him in his father's will:

"This will was probated and became a public record, easily accessible to appellant [plaintiff] and open to his examination. It disclosed his right to the property in controversy, revealed the falsity of appellee's alleged statements, and exposed the fraud complained of. From the date of the probate of this will, appellant had ample means of detecting the fraud alleged to have been perpetrated upon him, and by the exercise of reasonable diligence he would have seasonably discovered the truth and his right to the property claimed in this suit. Having had the means of discovery in his power, and having failed to make use of them, he cannot, after so long a time, avail himself of the fraud charged to avoid the bar of the statute."

We do not think any of the cases cited by appellee support his contention that the statute did not begin to run against him until he discovered that appellant had not issued the stock certificate to him. In Neyland v. Bendy, 69 Tex. 711, 7 S. W. 497, it appeared that Bendy had conveyed land to Neyland by a deed absolute on its face, but in fact in trust to pay certain indebtedness, and upon an express agreement that when the indebtedness was paid Neyland would reconvey the land to him. It was held that limitation would not run in Neyland's favor until he repudiated the trust thus created and Bendy had notice of such repudiation. A like ruling was made in McCarthy v. Woods (Tex. Civ. App.) 87 S. W. 405, on the theory that the defendant had agreed to hold the land for the plaintiff. In McBride v. Briggs (Tex. Civ. App.) 199 S. W. 341, it appeared that McBride and Briggs jointly purchased and paid for the land; the title thereto being taken in McBride's name alone. The trust thus created was never repudiated, and the court held it must have been to Briggs' knowledge before limitation would begin to run. Brothertom v. Weathersby, 73 Tex. 471, 11 S. W. 505, and Trust Co. v. Harbaugh (Tex. Civ. App.) 205 S. W. 496, were like the McBride-Briggs Case. The ruling in Ash v. Frank (Tex. Civ. App.) 142 S. W. 42, was on the theory that the defendant had misappropriated proceeds of certain insurance policies the plaintiff had turned over to it for collection. The court held that limitation does not begin to run against a principal in favor of an agent, when the latter has misappropriated funds of the former, until the misappropriation is discovered by the principal, or by the use of reasonable diligence would have been discovered by him. In White v. Leavitt, 20 Tex. 703, it appeared that the plaintiff had consigned certain goods to the defendant for sale. The suit was to recover the value of the goods. With reference to the statute of limitations which the defendant set up as a bar to the recovery sought, the court said:

"The proof shows that the goods were held and disposed of by White & Co. in trust for Leavitt, and there being no evidence that the trust was ever repudiated, the statute of limitations did not run upon the cause of action."

In Cole v. Noble, 63 Tex. 432, it appeared that C. W. Noble turned over to his brother S. F. Noble for collection certain notes he owned, which were secured by the vendor's lien on land he had sold. S. F. Noble surrendered the notes to the maker and took a reconveyance of the land, but in his own name instead of the name of his brother. The suit was by C. W. Noble against the widow of S. F. Noble. It did not appear that S. F. Noble intended when he took the title in his own name to defraud his brother, and he never repudiated the trust created by his act, nor did his widow repudiate it until a short time before the suit was commenced. The court held that limitation did not commence to run before such repudiation by the widow. In Cobb v. Bank, 91 Tex. 226, 42 S. W. 770, it appeared that Cobb, in consideration of service he rendered the bank as an attorney in procuring a judgment in its name and which it had a right to collect and discharge, became the owner of a part of the judgment before it was rendered. The bank collected the judgment, but failed either to account to Cobb for his part of it or to notify him of the fact that it had collected it. The court held that Cobb had a right to rely on the good faith of the bank, that it practiced fraud on him when it acted as it did, and that limitation did not begin to run in its favor until he "was apprised that the judgment had been discharged." In McCarthy v. Woods (Tex. Civ. App.) 87 S. W. 105, the court held that the statute had not run in the defendant's favor on the theory that he had agreed to hold the land in question for the plaintiff, who owned it, to protect him against a claim that might be asserted against it by one Decker. The court, concluding that the defendant by such agreement became a trustee, held that limitation did not begin to run in his favor until he repudiated the trust.

We think the judgment should have been in favor of appellant. Therefore it will be reversed, and judgment will be rendered here that appellee take nothing by his suit against appellant.