### NATIONAL LIFE & ACC. INS. CO. v. SMITH et al.    (No. 2305.)

Court of Civil Appeals of Texas. El. Paso. June 1, 1929.

Rehearing Denied Sept. 3, 1929.

R. A. D. Morton, of El Paso, for appellant. Jones, Goldstein, Hardie & Grambling and Sydney Smith, all of El Paso, for appellees.

HIGGINS, J.  This suit was brought by appellant, a Tennessee corporation, against numerous defendants and their attorney, Sydney Smith, Esq., to enjoin the prosecution of suits filed in the justice courts, and threatened to be filed in such courts, by holders of policies

of insurance issued by appellant, in which suits the defendants sought to recover from appellant premiums theretofore paid upon such policies. The policies were of the industrial type, and a combination form of health, accident, and endowment life insurance. The premiums were payable weekly.

The purpose of appellant's suit was accomplished by the defendants answering and filing a cross-action to recover such premiums. The pleadings need not be stated. They are sufficient to raise the questions presented. The case in large measure is companion to American National Insurance Co. v. Smith (Tex. Civ. App.) 13 S.W.(2d) 720, but has some slight difference in the facts, and some propositions of law are here presented which were not raised in the other case.

The applications for the policies contain this provision: "I further agree that no obligation shall exist against said company on account of this application, although I may have paid premiums thereon, unless said company shall issue a policy in pursuance thereof, and the same is delivered to me."

Upon the face of the policy it was provided that it was subject to each and all of the conditions on the reverse side which conditions were made a part of the contract. One of such conditions reads: "No liability is assumed by the company prior to the date hereof, nor unless on such date and delivery of this policy the first payment has been legally made and the applicant is in sound health."

Portions of a stipulation entered into by the parties read:

"1. That the application for each of the policies issued by the plaintiff and held by the defendants was executed by the policy holder, or some one for him or her, in the republic of Mexico, and there delivered to plaintiff's soliciting agent who was there soliciting such insurance as agent of the plaintiff, and said application was made on form Exhibit A–1, attached to plaintiff's amended or supplemental petition.

"2. That at the time of the execution and delivery of the application there was paid by applicant to the agent of the plaintiff a deposit or sum for an amount equal to at least four weeks' premium in advance; that said premiums were paid in Mexico to the same agent of the plaintiff that secured the application and receipt given on form Exhibit A–2 attached to amended or supplemental petition, and that the application, together with the advance deposit (four or more weekly premiums), was brought by the plaintiff's agent to El Paso and deposited in the plaintiff's district office at El Paso, Texas.

"3. That each of the applications were transmitted to the home office of the plaintiff at Nashville, Tennessee, and the application for each policy involved was then approved by the company at Nashville, Tennessee, the policies on forms B or C, attached to plaintiff's amended or supplemental petition, were prepared and duly signed by its proper officer at Nashville, Tennessee, and post dated to be of date of the following Monday and mailed a sufficient length of time in advance of the following Monday to reach the district office at El Paso not later than Saturday preceding such Monday for manual delivery on the following Monday. Each policy was then mailed to the El Paso district office of the plaintiff, and each policy then delivered to the agent of the plaintiff; that thereafter the agent of the plaintiff, on the following Monday took the policy, together with form of receipt book, in which had been entered, as of the date of the policy, the advance premiums previously paid, to Juarez, Mexico, and there manually delivered the policy with the receipt book to the applicant on the date that the policy bore.

"4. That prior to October 1, 1926, the plaintiff's agent called upon each of the defendants herein, except Sydney Smith in the city of Juarez, to collect the weekly premiums, and entered the receipt therefor in the receipt book of the policy holder, and the amount of premiums collected by the plaintiff on each policy involved herein is as stated in the respective premium receipt books delivered by the plaintiff at the time of the delivery of the policy. * * *

"5. That at all times covered by the transactions involved in this suit the laws of the republic of Mexico provided that no person, company or corporation should be permitted to transact an insurance business in the republic of Mexico without first complying with the laws of that country, and securing a permit to do business there; such laws further providing that any person, company or corporation doing business in the republic of Mexico, without having complied with the laws, and without having secured such permits, should be punished as provided for under the laws of Mexico, and that all transactions in connection with the writing of such insurance and all documents issued should be null and void, and should not be of any effect whatsoever."

"6. That plaintiff herein has at no time complied with the laws of Mexico, and has never obtained a permit to do an insurance business in Mexico, and that defendants herein, except Sydney Smith, had no notice or knowledge prior to October 1, 1926, that plaintiff had failed to comply with the laws of Mexico and obtain a permit; reserving the right, however, to plaintiff to contend for implied or constructive notice or knowledge of such failure by each cross plaintiff before said date, by reason only of said law and failure to comply therewith."

"11. Plaintiff is a Tennessee corporation authorized to engage in life, health and accident insurance business, and is duly and legally qualified and permitted to engage in such business in the state of Texas, and has been at all of the times involved herein, and at all such times has had a district office in

El Paso, Texas, and its home office at Nashville, Tennessee."

"14. That each defendant, or former policy holder, involved in this suit was in sound health on the date of making application for the policy involved in this suit, and that the date of each policy mentioned in this suit is subsequent to date of application therefor and is not later than four weeks after the date of the respective application therefor, and the date of the respective receipt given by plaintiff's agent at the time the application was signed."

"17. That under the statutory law of Tennessee every policy of insurance issued to or for the benefit of any citizen or resident of Tennessee is required to contain the contract between the parties, but such statute has been construed by the courts and the law is that same does not apply unless the insurance issued to or for the benefit of a citizen or resident of Tennessee, and where such is not the case the common-law rule on the subject prevailing in Tennessee is that neither party concerned in such insurance is precluded from relying upon any instrument relating to such insurance, regardless of whether same be attached to or made a part of the policy or not. But such statute does not apply to industrial insurance of the kind involved in this suit and the Tennessee law is that as regards such insurance either party concerned may rely upon any instrument relating to such insurance, regardless of whether attached to or made part of the policy or not."

By supplementary stipulation it was agreed "that in each instance each former policy holder was in sound health on the respective date of the application and receipt and continued so until the date the policy bore and the manual delivery thereof in Mexico to be assured."

Rule 51 in appellant's book of instructions issued to its soliciting agents reads:

51. *Delivery of Policies.*—The policy must be delivered to the applicant, together with the premium receipt book, at the earliest opportunity. The agent, when delivering a policy or policies, can often, by means of a little tact, secure the payment of a few premiums in addition to the sum paid when the application was written, thus avoiding the chance of an immediate lapse.

"Before delivering the policy the agent must see the insured and satisfy himself that the risk is in sound health. If appearance is not satisfactory the agent must not, under any circumstances, deliver the policy to the applicant, but must return the policy to the manager, reporting the apparent condition of the applicant. If the manager determines that the policy should not be delivered within the week, the policy should be submitted for lapse.

"Agents are forbidden to deliver a policy to any one other than the insured or the applicant."

The case was submitted upon special issues, which, with the answers returned, read:

"Question No. 1. Do you find from the evidence that the policies in question herein were deposited by the plaintiff in the mail addressed to its branch office in El Paso for unconditional delivery to the assureds named therein?

"Answer: No.

"Question No. 2. Do you believe from a preponderance of the evidence that the policies in question were sent to the district office of the plaintiff in El Paso with the direction that same would not be manually delivered to the assureds unless the agent making the delivery satisfied himself that the assureds were in good health?

"Answer: Yes.

"Question No. 3. Do you find from a preponderance of the evidence that the cross plaintiffs paying premiums in El Paso on or after October 1, 1926, then had notice that at the time of the issuance of their policies the plaintiff had no permit to engage in the insurance business in Mexico?

"Answer: No."

In accordance with the prayer of the cross-plaintiffs, judgment was entered in favor of their attorney, Sydney Smith, trustee, for the aggregate amount of the premiums paid. Appellant takes no exception to the rendition and entry of the judgment in favor of such trustee rather than the policy holders.

At the time the application was received by appellant's soliciting agent, each applicant paid to the agent a sum equal to at least four weeks' premiums for the policy applied for, and thereupon the agent filled in and delivered to the applicant the binding receipt which reads as follows:

"Received of ——— $——— for a deposit of ———weekly premiums on account of application for insurance in the National Life & Accident Insurance Company made this date. If the application is accepted and a policy is sued, this sum will be applied toward payment of the premiums thereon. If application is rejected the amount will be returned to the applicant. No obligation is incurred by said company by reason of this deposit, unless and until a policy is issued upon said application, and unless at the date of delivery of said policy the life proposed is alive and in sound health, except that if the life proposed is now in sound health and the amount paid by the applicant at the time the application is written is not less than four weekly premiums and this receipt, detached from the original application, covering said payments, is surrendered to the company, the company agrees, if the application is approved at the home office in Nashville, Tennessee, that should death occur prior to the delivery of this policy, or should the applicant by reason of sickness or accident be totally disabled within the meaning of the policy applied for, or should the applicant by reason of accident suffer dis-

memberment within the meaning of the policy applied for, or by reason of illness or accident suffer the loss of sight of both eyes, it will nevertheless pay such amount as would have been due under the policy if issued, provided such sickness have its beginning or such accident occur after the date and signing of this application. No obligation is assured by the company unless the application is so approved and the life proposed is now in sound health."

Appellant's first proposition is: The court erred in not giving the peremptory instruction requested by plaintiff, because it was undisputed each claimant signed an application in Mexico, and at the same time received a binding receipt providing that, if the application was approved at the home office of plaintiff in Nashville, Tennessee, the insurance would become effective on such approval at the home office, and it being undisputed that in each instance here involved the application was approved by the home office and the policy issued. and delivered, and that at all such times the applicant was in good and sound health; hence there was no issue to submit to the jury, and failure to instruct a verdict for the plaintiff was error.

■ In the American National Insurance Company Case, supra, we are advised a writ of error was refused by the Supreme Court on May 8, 1929. Under the ruling in that case the policies here involved did not become effective until delivery in Mexico, and the validity of the contracts is governed by the laws of Mexico. Upon the agreed facts, the findings of the jury herein, and the ruling in the cited case, the above proposition, and the tenth also, must be overruled, unless the receipt quoted above differentiates the present suit from the American National Insurance Company Case.

Whether such receipt be considered a separate contract of insurance, or a modification of the terms of the application, it was in either event governed by the laws of Mexico, because executed and delivered in Mexico, and under the laws of that republic it was null and void and of no effect whatever. See paragraph 5 of stipulation quoted. It is therefore ineffective for any purpose, and does not differentiate the present case from the case cited.

Appellant's second proposition is predicated upon facts assumed contrary to findings 1 and 2. The evidence amply supports these findings. The proposition is therefore without merit.

■ The court did not err in admitting in evidence the appellant's rule book and testimony of its present and former agents as to instructions given them regarding delivery of policies. This evidence was relevant and competent upon the first two issues submitted to the jury, to show when and where the contracts were finally completed and by what law they were governed. Such evidence does not vary the terms of the contracts evidenced by the applications, binding receipts, and policies, but show when and where the contracts were finally made. This question is ruled against appellant by the decision in the case referred to above.

· Propositions 3 and 4 are as follows:

"The settled public policy of Texas being that contracts of or with insurance companies not having a permit to do business in Texas are not void, it would contravene that public policy to allow any recovery herein, even if the Mexican law did declare such contracts void.

"The court erred in allowing recovery of any sum, because the sums sought to be recovered by cross-plaintiffs are penalties assessed by foreign law, which will not be enforced in the courts of Texas."

■ The recovery allowed in this case is not based upon any statutory penalty prescribed by the law of Mexico. The recovery is based upon the common-law rule allowing the recovery of premiums paid upon insurance contracts, void ab initio, to which no risk ever attached; appellees being free from fault or blame in the matter. In such a case the law implies a promise to repay the premuims. See American National Ins. Co. Case. The rule of the common law allows such recovery, and in our opinion it does not in any wise contravene the public policy of this state. ·

In bar of the action, appellant pleaded the two-year statute of limitations. Rev. St. 1925, art. 5526. The suits in the justice courts were filed January 11, 1928. The cross-action herein was filed June 15, 1928. It embraces actions by those who had already filed the suits in the justice courts, and others who were threatening to file such suits, and against whom plaintiff had filed its suit. The agreed facts show that of the total recovery sought $3,917.55 was paid prior to January 1, 1926. Upon this state of facts appellant contends its plea of limitation to said sum of $3,917.55 should have been sustained.

■ In actions based upon fraud, limitation does not begin to run until the fraud is discovered, or ought to have been discovered by reasonable diligence. Munson v. Hallowell, 26 Tex. 475, 84 Am. Dec. 582; Cobb v. Bank, 91 Tex. 226, 42 S. W. 770; Calhoun v. Burton, 64 Tex. 510.

■ There is here present fraud practiced by appellant upon appellees; fraud which is inseparably connected with the appellees' right of recovery, and out of which the causes of action arose. We refer to the conduct of appellant going into Mexico and soliciting appellees to apply for contracts of insurance and consummating the contracts in Mexico, so that the validity of the contracts is governed by the law of Mexico; at the time knowing it was not authorized to do business in Mexico, and knowing or charged with knowledge that under the law of that republic such contracts were void, and no risk ever

legally attached. And with this knowledge appellant continued weekly to go to Mexico and collect the premiums upon the policies. This weekly collection of premiums was a continuing fraud, and necessarily implies concealment of appellant's lack of authority to do business in Mexico. Appellees had a right to assume that appellant was not doing business there in violation of law.

In this connection we quote excerpts from Corbett v. Physicians' Casualty Co., 135 Wis. 505, 115 N. W. 365, 369, 16 L. R. A. (N. S.) 177. In that case a Nebraska corporation, which had not qualified to do business in Wisconsin by complying with the law of that State, was sued upon an insurance policy. It was contended the contract was unenforceable in the courts of that state. Among other things the court said:

"There is no escaping the conclusion, it seems, applying one's reason to the plain words of the law, that appellant in negotiating with the assured and issuing to him the beneficiary certificate held itself out as qualified to do so and by such false pretense committed a fraud upon the assured, if he was excusably an innocent participant in the transaction. * * *

"It is presumed that every one of the age of discretion and of sound mind knows the. law. 'Ignorantia legis non excusat.' That applies to civil as well as to criminal cases especially as regards wrongs involving fraud or violation of statutory prohibitions, wrongs which are malum prohibitum. Appellant cannot escape the full force of that principle upon the ground that the law of Wisconsin as to it was foreign, because state restrictions upon insurance business by foreign corporations are so universal that it must be presumed that one circumstanced as appellant was respecting the transaction under consideration knows, or at least has reasonable ground to know, not only that statutory conditions exist regarding its capacity under the laws of the state to make such contracts, but that assured, in the absence of information to the contrary, would reasonably expect the contract to be made with reference to the law bearing on its validity. Where a foreign makes a contract with a domestic person and the right to do so is regulated by the law of the domicile of the latter, the former is presumed to know such law. Huthsing v. Bosquet (C. C.) 17 F. 54, 3 McCrary, 569.

"The next elementary principle applying significantly to the facts here, is that violations of civil as well as criminal law are presumed against. Norton v. Kearney, 10 Wis. 443; Law v. Grant, 37 Wis. 548; 22 Am. & Eng. Ency. of Law (2d Ed.) 1280–1282. The text at the latter citation, supported by numerous authorities, so well states the rule that we cannot well do better than to quote it:

" 'As a general rule, the presumption is that persons act honestly and properly in their business and social relations; or, in other words, there is a presumption against misconduct on the part of individuals. * * * Thus, in an action on a contract, where the validity of the contract depends on the question whether one of the parties thereto was licensed to transact the particular business to which the contract related, it will be presumed that he was duly licensed.' * * *

"Up to this point, under the facts of this case, it seems to be established that appellant in entering into the relations it did with the assured, knew that it was violating the law of this state. By the plain words of the law, and on principle, it was inexcusably a wrongdoer. At the same time the assured, so far as the record shows, had a right to assume that appellant had complied with the law. * * *

"It has been expressly held in many jurisdictions that when a foreign insurance corporation offers to contract with the citizens of a state that the latter has a right to rely upon the former having complied with the law and so is not obliged to make any investigation in that regard. * * *

"A resident of this state while in this state, with whom a foreign insurance company offers to contract, in the absence of actual or constructive knowledge to the contrary, may safely rely upon the pretense involved in such offer that such company is competent to so contract. * * *"

In Cobb v. Bank, 91 Tex. 226, 42 S. W. 770, 771, Chief Justice Gaines said:

"And again, where a fraudulent concealment of a cause of action is relied on to suspend the operation of the statute, some active artifice to suppress a knowledge of the fact must be shown. Mere failure to disclose is not sufficient. But where there is fraud in the very transaction out of which the cause of action arises, or where there is a relation of confidence between the parties, and it is the duty of the defendant to disclose the fact, then the statute will not run until the fraud is discovered, or ought, by the use of reasonable diligence to have been discovered. Bates v. Preble, 151 U. S. 149, 14 S. Ct. 277, 38 L. Ed. 106. In Lichty v. Hugus, 55 Pa. 434, above cited, the court say: 'The morality of the relation demanded this qualification; for, as counsel owe good fidelity to clients, so the client is bound to make fair and reasonable compensation to this counsel, and it is fraud upon the counsel for the client to settle the suit without his knowledge, to withhold his fees, and then to set up the statute of limitations against him.' Since in this case the entire judgment was taken in the name of the bank, and the bank had the power to collect the money and discharge the debt, it is apparent that the attorneys reposed confidence in the bank, and had the right to rely upon its good faith in accounting for their share, in the event it collected the money. It was a fraud on part of the bank not to do so. We

therefore think that the statute did not begin to run until the appellant was apprised that the judgment had been discharged."

See, also, Munson v. Hallowell, supra; Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

In the case at bar there was fraud in the very transactions out of which the appellees' causes of action arose, and under the rule announced by Judge Gaines we think the statute did not begin to run against appellees until they were apprised of the fact upon which their cause of action primarily rests, namely, the fact that appellant was not authorized to do business in Mexico when the contracts were made. The record discloses it has never complied with the Mexican law. The cross-action was filed June 15, 1928. The stipulation (paragraph 6) shows that appellees had no notice or knowledge, prior to October 1, 1926, that appellant had failed to comply with the law of Mexico and obtain a permit to do business there. The suit was thus filed within two years after limitation began to run.

About October 1, 1926, appellant ceased to send its agents to Juarez to collect the weekly premiums. On that date appellant's manager in El Paso mailed to the various policy holders in Juarez a letter which reads:

"We have not yet received permission from the government to personally make our collections in the city of Juarez; therefore it is necessary that you trouble yourself by coming to our office, situated in the First National Bank Building, No. 763, in order to make the payment upon your policy, or send the same by mail, either in international postal money orders, bank drafts, or American bills, and we enclose an envelope which you may use for that purpose, to the end that you keep your policy in full force (in benefit), remembering that the payments must be made always punctually.

"We give you our complete assurance that all claims, either in case of sickness or in death, will be immediately attended to and paid.

"We regret very much our inability to personally pass to make our collections for the present, but we will do so as soon as we receive the corresponding permit from the government.

"We remain your attentive and faithful servant, J. R. Hedrick, Manager National Life & Acc. Ins. Co., Tennessee National."

Of the amount recovered by appellees, $2,888.65 represented premiums paid after the date of this letter. Of said amount, $425.55 was paid by policy holders who came personally to appellant's El Paso office. Appellant's witness Brill testified:

"I speak Spanish. I recall that about the 1st of October, 1926, that a letter was sent out from the El Paso office to these people in Mexico. The reason for that was we could not send agents over there to collect any longer, because the company did not have a permit. After that letter went out some of those people came over to the El Paso office to pay premiums. I had instructions from the manager to be there every day from 12 to 1, and from 12 Wednesdays all day, and Saturday all day, to explain to them the reason why we did not send collectors there any more. First I asked them if they had received the letter, then I told them that we had not got no permission; that is the reason we stopped, our reason not to go there to collect any more. I tried to convince them they ought to keep their policies in force by paying the premiums in El Paso. I also told them, if they were sick, the claims would be mailed direct to them, also death claims would be paid. I told them they were still in benefit, they should keep on their premiums, and if they got sick send in their claim to the office, and we would send them a check. In other words, I urged them to keep on paying premiums in El Paso, and a good many of them did.

"I testified before that I told these people that they would be in benefit if they paid their premiums. I do not remember that I testified before as follows: 'I told them this way, that we have no permission to go there and collect; if they wanted to make their payments they could come over here, and benefits would be paid them just as before.' I testified on cross-examination before that I told them that solicitors had been stopped from going over there. I told them they could not go over there at that time, and that their policies would be in benefit if they kept up their premiums. I did not tell them that their policies were all right. I did not use the words 'all right.' I said 'in benefit.' I remember I said 'in benefit.' What I told them was their policies were all right and they would be in benefit if they kept up their premiums. I told them we could not send our agents over there to collect, and if they wanted to keep their policies in benefit they had to come over here and pay it. That is all I told them. * * *

"I merely told them we did not have any permission to go and collect their premiums over in Juarez, and they would have to come here."

It is contended that those appellees who paid premiums subsequent to the date of above letter, and particularly those who came to the El Paso office and were talked to by the witness Brill, waived the invalidity of the contracts in their inception and ratified the same, or are now estopped to assert such invalidity. The soundness of the legal proposition involved, for the purpose of the case, may be assumed. But the letter and what Brill told those who came to the El Paso office falls far short of affecting appellees with notice of the fact that appellant had been doing business in Mexico without a permit. The letter and Brill's statement was calculated to deceive, rather than to advise the policy holders of the true state of facts. The letter and

statements would indicate simply a temporary inability to send the collectors across to Juarez. It was calculated to lull the policy holders into a sense of security, rather than to advise them of the true state of facts.

The third question, accompanying which an appropriate instruction was given, relates to the issue of notice as to the policy holders talked to by Brill. The evidence supports the finding made upon the issue. Certainly it cannot be said as to the other appellees that the letter, as a matter of law, charged them with notice of the facts which rendered the contracts held by them illegal and void.

The overruling of the application for a continuance presents no error. Due diligence to procure the testimony of the missing witness was not shown. Furthermore, it was the second application for a continuance, and upon the trial other witnesses testified to practically the same facts sought to be shown by the absent witness.

Affirmed.